HENRY H. MASSEY *et al.*

*v.*

BESSIE B. HUNTINGTON.

*Filed at Ottawa June 12, 1886.*

1. IMPEACHMENT OF DEED—*by the grantor—presumption as to his knowledge of contents.* Papers for the transfer of property to a trustee, in trust for the grantor and his wife, during their lives, and for the disposal of what might remain after their death, had been prepared on due consultation and due deliberation of the grantor, and the notary who took the acknowledgment of the grantors testified that the deeds had been signed before he came to take the acknowledgment, and that the grantors acknowledged the same: *Held,* that it would be presumed that the grantors had read the deeds, and that the wife freely and voluntarily executed the same, with a full knowledge of their contents and bearing on her rights.

2. SAME—*prior and subsequent declarations of grantor.* The declarations of a testator or grantor, made before or after the execution of a will or deed, may be competent evidence to prove his mental condition, but they are not competent to show undue influence or fraud.

3. A person can not impeach a deed or other instrument of writing which he has voluntarily executed, by his own subsequent parol declarations.

4. TESTAMENTARY DISPOSITION—*or a trust.* Where a disposition of property made by a written instrument is not to take effect until the death of the maker, it may be regarded as testamentary in character, and it will remain subject to revocation or change during his life.

5. A trust is created when no act is necessary to be done to give it effect, and when the trust is fully and finally declared in the instrument creating it.

6. In this case, husband and wife, by deeds, conveyed the real and personal estate of the former to a trustee in trust, out of which the trustee was to pay the husband $40 a month, and such other amount as he might deem necessary for the support of the grantor and his wife; and upon the death of the husband, if before the death of the wife, to make like payments to her, and upon the death of both, to convey and transfer all the remaining property and effects to certain persons named. The deeds were duly acknowledged and delivered, and contained no power of revocation: *Held,* that the deeds constituted an executed trust, not a mere testamentary disposition, nothing being left by the grantors to give the same effect.

7. TRUST—*consideration—whether necessary.* Where a trust is complete and executed, so that nothing further remains to be done by the person creating it, to give it effect, the absence of a consideration is not material.

APPEAL from the Superior Court of Cook county; the Hon. H. M. SHEPARD, Judge, presiding.

Messrs. CAMPBELL, HAMILTON & CUSTER, and Messrs. MILLARD & SMITH, for the appellants:

Testimony as to previous statements and declarations of a testator or a grantor in a deed, made prior or subsequent to the making of the deed or will, are admissible only to show mental condition, but are not admissible to show fraud or undue influence exercised upon the testator or grantor. *Dickie* v. *Carter*, 42 Ill. 388; 1 Jarman on Wills, 135; *Richardson* v. *Richardson*, 35 Vt. 238; *Robinson* v. *Hutchinson*, 26 Vt. 45.

If the writing was an executed and delivered instrument, there being nothing left for the donor to do to complete the trust, and it is to take effect immediately, then it is a trust, and it is not testamentary in its character. If, however, it is not executed, or is to take effect in the future, as, on the death of the grantor, then it is testamentary. 1 Sanders on Uses and Trusts. 371, and note.

A trust is executed, when no act is necessary to be done to give effect to it,—when the trust is fully and finally declared in the instrument creating it. 2 Pomeroy's Eq. sec. 1001; Perry on Trusts, 100 *et seq.; Light* v. *Scott*, 88 Ill. 240; *Ellison* v. *Ellison*, 6 Ves. Jr. 662.

Equity will look to the substance of the act done, and the intention with which it was done, and carry out that intention. *Padfield* v. *Padfield*, 72 Ill. 326; *Badgley* v. *Votrain*, 68 id. 25.

Nor is the absence of a consideration material, when the trust is complete and executed, as it was here, not only by making and delivering the trust instrument, but by making and delivering a deed of the real property, and a bill of sale of the personal property, and also delivering the personal property. *Ex parte Pye*, 18 Ves. 148; *Otis* v. *Beckwith*, 49 Ill. 135; *Padfield* v. *Padfield, supra;* 68 id. 322; *Ellison* v.

*Ellison,* 6 Ves. Jr. 656; *Douglass* v. *Littler,* 58 Ill. 348; *Stone* v. *Hackett,* 12 Gray, 227.

Delivery of the deeds on the day of their date is presumed. *Jayne* v. *Gregg,* 42 Ill. 413; *Hardin* v. *Crate,* 78 id. 533; *Thompson* v. *Chamberlin,* 88 id. 378.

The law presumes more in favor of delivery in voluntary settlements than in ordinary cases. *Bryan* v. *Wash,* 2 Gilm. 557.

Many cases hold that in voluntary settlements there need not be delivery of the deed in the grantor's lifetime. Perry on Trusts, sec. 103; *Bunn* v. *Winthrop,* 1 Johns. Ch. 329.

No weakness of mind is shown, and if there was, it alone would not be sufficient to set aside the trust. *Harrison* v. *Guest,* 6 DeGex, M. & G. 424; *Brown* v. *Riggin,* 94 Ill. 560.

Undue influence will not be presumed between husband and wife. *Hardy* v. *Van Hartigan,* 7 Ohio St. 208.

It has been held that the wife can not set up undue influence against her husband, unless she also proves participation by the grantee. *White* v. *Graves,* 107 Mass. 325.

Undue influence must be such as to overcome the party's free agency. *Forney* v. *Ferrell,* 4 W. Va. 729; *Lynch* v. *Clements,* 9 C. E. Green, (N. J.) 431; *Barnes* v. *Barnes,* 66 Maine, 286; *Brick* v. *Brick,* 66 N. Y. 144; *Sisters, etc.* v. *Catholic Bishop,* 86 Ill. 171; *Roe* v. *Taylor,* 45 id. 486.

Messrs. DENT, BLACK & CRATTY BROS., for the appellee:

There was no consideration on the part of Mrs. Rexford for the rights she surrendered by the conveyances. It is proper to consider whether these papers were based upon any consideration as to her, or were a fraud upon her rights.

Married women and infants are the peculiar care of courts of equity. *Mix* v. *King,* 55 Ill. 439.

The court will exercise parental solicitude where the wife has acted under the influence of the husband. 2 Story's Eq. Jur. secs. 1395, 1429.

Equity will interfere whenever the circumstances are such as to warrant the presumption that undue influence has been exerted, that confidence has been abused, and that improper and unwarrantable advantage has been taken by one party, of the age, weakness or ignorance of the other. 3 Leading Cases in Eq. 119, 120, 126, 127.

The provision made in the transfer, for the wife, was one which would have left her dependent and almost a pauper. The provision made for her was not adequate, and she would thereby be deprived of her rights. 2 Story's Eq. Jur. sec. 1416.

The transfer was a voluntary one, contrived by the husband with a view of defeating the claims of his wife, and she should therefore be aided to the extent of the restoration of her rights. *Smith* v. *Smith*, 12 Cal. 217.

The following cases establish the doctrines on which we rely: *Thayer* v. *Thayer*, 14 Vt. 107; *Frederick's Appeal*, 52 Pa. St. 338; *Garnsey* v. *Mundy*, 14 N. J. Eq. 243; *Schaper* v. *Schaper*, 84 Ill. 603; *Coulson* v. *Allison*, 2 DeG., F. & J. *521; *Stone* v. *Stone*, 18 Mo. 389; *Tucker* v. *Tucker*, 29 id. 350; 32 id. 464; *Phillipson* v. *Kerr*, 32 Beav. 628.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Fanny H. Rexford, to set aside a deed, bill of sale, and a declaration in trust, executed by the complainant, and Heber S. Rexford, Jr., her husband, to H. H. Massey, trustee, and Ephraim H. Dennison, successor in trust. The three papers were executed on the 14th day of February, 1882. The deed, for an expressed consideration of one dollar and love and affection, and other good and valuable considerations, purported to convey five acres of land in Cook county, which was then owned by Heber S. Rexford, Jr. By the bill of sale, upon a like consideration, Heber S. and Fanny H. Rexford granted, bargained, sold and delivered to Massey, trustee, and Dennison, his successor in trust, a promissory note for $100, and

an open account for $2191.21, against Norman Rexford; also, one certificate of insurance, (No. 25,962,) in the Lumberman's Lodge No. 1815, of Knights of Honor, for the sum of $2000, bearing date the 11th day of February, 1882, on the life of the said Heber S. Rexford, Jr., and payable at his death; also, one policy of insurance issued by the Connecticut Mutual Life Insurance Company, numbered 134,395, on the life of the said Heber S. Rexford, Jr., for the sum of $1000, on the ten year plan, dated May 13, A. D. 1875, and payable at his death.

The declaration of trust provided that "the above conveyance of the real estate therein described, and the above bill of sale of the personal property therein described, are respectively made, executed and delivered by the undersigned, Heber S. Rexford, Jr., and Fanny H. Rexford, his wife, to the said Henry H. Massey, or his successor in trust, for the following uses and purposes, to-wit: To hold the personal property with power to sell, to lease or incumber the real estate, and—

"*First*—To pay all necessary expenses, including reasonable compensation for said trustee's services attending the management of the property above conveyed, and the execution of the trust herein created.

"*Second*—To pay to the said Heber S. Rexford, Jr., during his life, the sum of forty dollars ($40) per month, and such other amount as he may deem necessary from time to time, for the comfortable maintenance and support of the said Heber S. Rexford, Jr., and Fanny H. Rexford, his wife; and in case of the death of said Heber S. Rexford, Jr., before the death of the said Fanny H. Rexford, his wife, then and in that case the said Henry H. Massey, or his successor in trust, shall pay to the said Fanny H. Rexford, during her life, the sum of forty dollars ($40) per month, and from time to time such other sums as he may deem necessary for the comfortable support and maintenance of the said Fanny H. Rexford; and all the rest and residue of such proceeds as aforesaid,

and any or all of said personal property described in above bill of sale as may remain in the hands of the said Henry H. Massey, or his successor in trust, at the death of the said Heber S. Rexford, Jr., should he survive the said Fanny H. Rexford, or at the death of the said Fanny H. Rexford, if she should survive the said Heber S. Rexford, Jr., the said Henry H. Massey, or his successor in trust, shall pay over and deliver the same to the following named persons, to-wit: Two hundred and fifty dollars ($250) to be paid to Mrs. Maria D. Huntington, of Blue Island, Cook county, Illinois, mother of Fanny H. Rexford, if she should survive the said Heber S. Rexford, Jr., and Fanny H. Rexford; if she should not survive the said Heber S. Rexford, Jr., and Fanny H. Rexford, then and in that event the said sum of two hundred and fifty dollars ($250) shall be divided, with the rest, residue and remainder of the estate, as follows: One-quarter ($\frac{1}{4}$) thereof to Julia Rexford, mother of said Heber S. Rexford, Jr., one-quarter ($\frac{1}{4}$) thereof to F. D. Rexford, of Centralia, Illinois, one-quarter ($\frac{1}{4}$) thereof to Norman B. Rexford, of Blue Island, Cook county, Illinois, and the remaining one-quarter thereof to Mrs. C. Caroline Massey, wife of said Henry H. Massey, of Blue Island, Cook county, Illinois, or to their or each of their administrators, executors or assigns, and the said Henry H. Massey, or his successor in trust, shall, from the execution and delivery of this instrument, hold the legal title of said real estate above conveyed to him, subject to the other trust herein set forth, in trust for said Julia Rexford, F. D. Rexford, Norman B. Rexford and C. Caroline Massey, share and share alike, and at the time of the distribution of any remainder of said personal property, or the proceeds thereof, and the rentals and incumbrances aforesaid, as above set forth, the said Henry H. Massey, or his successor in trust, shall make, execute and deliver to the said Julia Rexford, F. D. Rexford, Norman B. Rexford and C. Caroline Massey, or their or each of their heirs, legatees or assigns, good and

sufficient deed or deeds to convey the legal title of said real estate to them, whereupon this trust shall cease and be determined."

The deed, bill of sale and declaration of trust were acknowledged before a notary public on the day of their date, and delivered to the trustee, Massey, who filed them for record in the recorder's office of Cook county on the 13th day of May, 1882. Heber S. Rexford, Jr., died intestate on the 12th day of May, 1882, leaving a widow, Fanny H. Rexford, but no child or children, or descendants of any child. On the 5th day of September, 1882, the widow filed this bill to set aside the deed, bill of sale, and declaration of trust, on the ground of undue influence, the bill charging that the papers were executed without consideration, and that the complainant was overreached in the execution thereof. It is also charged in the bill that the papers executed were intended as a testamentary disposition of the property, and hence not binding on the complainant. The complainant, Fanny H. Rexford, died October 27, 1882. Previous to her death she made a will devising all her estate to Bessie B. Huntington, her sister, who was substituted as a party complainant in the bill.

As respects the execution of the papers by Heber S. Rexford, it is apparent, from the evidence, that they were executed after mature deliberation, and with a full understanding of their terms, conditions, and the manner in which they would affect his rights and also the rights of his wife. He and his wife were both in the last stages of consumption, and his desire no doubt was, to make such a disposition of his property as would afford a reasonable support for himself and wife while living, and after their death have the remainder pass into the hands of his own relatives. While on a visit with a brother, at Centralia, in January, 1882, he requested his brother to consult a lawyer as to the best mode of disposing of his property. It seems that Rexford's brother, after a consultation, informed him that the lawyer advised that a

will might be defeated by an election of the widow, but that
the matter might be arranged in the shape of a trust. Soon
after this, Rexford returned to Cook county, and in an inter-
view with Massey obtained his consent to act as trustee, and
sent Massey with a memorandum to Judge Wallace, to have
the papers prepared. Wallace desired further information,
which was obtained from Rexford, and within a few days the
papers were prepared, and placed in the hands of Rexford and
his wife for execution, and were executed and acknowledged,
as stated before. So far as appears, there was no haste in
the preparation or execution of the papers, but mature de-
liberation characterized the whole transaction.

But it is said that Fanny H. Rexford, the wife, had not
understood the nature of the papers, and they were a fraud
upon her rights. She never testified in the case, and what
might have been her account of the transaction had she been
called upon as a witness, is mere conjecture. The evidence of
the notary public before whom they acknowledged the papers
is in the record. He stated that the papers were acknowl-
edged on the evening of February 14, 1882, at the house of
Mrs. Sammons. He also testified: "When I got there I had
a little conversation before taking the acknowledgment; then
I took the paper and asked Heber and Fanny Rexford if these
were their signatures,—if they were their free and voluntary
act and deed for the purposes set forth in the deed. Heber
and Fanny were sitting right near together, and Heber said,
'Yes,' and Fanny gave an affirmative nod of her head in each
of the three acknowledgments." The three papers had been
signed by Rexford and his wife before the notary called, and
the presumption is, that they had read them and understood
the contents, and if reliance is to be placed on the evidence
of the notary, and we perceive no reason to question it, Fanny
H. Rexford freely and voluntarily executed the three papers,
with a full knowledge of their contents and bearing on her
rights.

The complainant, Bessie B. Huntington, sole devisee of Fanny Rexford, testified to a certain conversation between Massey, the trustee, and Mrs. Rexford, which occurred after the death of her husband, and reliance is placed upon this evidence to show that Fanny Rexford was misled in the execution of the papers. She testified that her sister, Mrs. Rexford, called on Massey for money to furnish a room, and he told her he had no money for that purpose, when Mrs. Rexford said it was not at all as she had understood it when she had signed the paper; she said she understood she was to have whatever she wanted, and that it was not to be a matter of Mr. Massey's deciding what she wanted; that she was simply to go to him when she wanted it, and she repeatedly said it was told her so, and that was the way she understood it, and she said once that Mr. Massey understood it just so, she felt sure. The declarations of a testator or grantor made before or after the execution of a will or deed might be competent evidence to prove mental condition, but such declarations are not competent to show undue influence or fraud. The law is well settled, that a party can not impeach a deed or other instrument of writing which he has voluntarily executed, by his own parol declarations. *Dickie* v. *Carter,* 42 Ill. 384.

As observed before, when the papers were executed, Rexford and his wife were both weak in body, and neither was expected long to live; but so far as is shown by the evidence, their mental faculties were not impaired, and they were fully competent to transact any ordinary business. It is no doubt true, that after the death of Rexford his wife became dissatisfied with the disposition which had been made of the property, but this record contains no sufficient evidence to establish undue influence or fraud practiced upon her, and she and those claiming under her must be held bound by the papers which she voluntarily executed.

*Schaper* v. *Schaper*, 84 Ill. 604, has been cited by complainant's counsel as an authority in her favor. We are entirely satisfied with the decision made in the case cited, but the facts there are so different from the facts of this case that it can not be regarded as an authority here. *Thayer* v. *Thayer*, 14 Vt. 107, has also been cited. That case was doubtless decided right, on its facts. There, the wife did not join in the execution of the papers, and the transaction was entered into by the husband in order to defraud her out of her just rights, and the court properly held that she was entitled to relief. Other cases have been cited, but they will all be found, upon examination, to be so widely different in their facts from this case as not to be authority here.

But it is urged that the disposition of the property was testamentary in character, and hence not conclusive on the wife. If the deed which was executed by Rexford and his wife, purporting to convey the property to Massey, was an instrument to take effect in the future, as, upon the death of the grantor, then it might be regarded as testamentary in character. If, on the other hand, the deed was an executed and delivered instrument, to take immediate effect, and nothing left for the grantors to do in order to complete the contemplated arrangement, then it is a trust. (1 Sanders on Uses and Trusts, 371.) Upon an inspection of the deed under which the property was transferred to the trustee, it is manifest that the transaction is an executed trust. The property is absolutely transferred to the trustee. The grantors retain no control whatever over it. The trustee takes the property, and by the terms of the deed he is required to pay Heber S. Rexford, Jr., during his natural life, $40 per month, and such other amount as he may deem necessary for the support of Rexford and his wife, and upon the death of Rexford before the death of his wife, then the trustee is required to pay her $40 per month, and such other sum as he may deem necessary for her comfortable support. Upon the death of both

Rexford and his wife, a certain and absolute disposition of the property remaining is provided for. No power of revocation is reserved, nor was anything left for the grantors to do, but the property vested absolutely in the trustee, on delivery of the deed, for certain specified purposes. A testamentary disposition of property does not take effect until the death of the testator, and hence is within the control of the testator, liable to be changed or abrogated at his pleasure. But this transaction contains no element of that character. In 2 Pomeroy's Equity Jurisprudence, sec. 1001, the author says: "A trust is executed, when no act is necessary to be done to give it effect,—when the trust is fully and finally declared in the instrument creating it." Such is this transaction.

It is said, that the transaction has no consideration to sustain it. Where the trust is complete and executed, as in this case, a consideration is not material. *Ex parte Pye,* 18 Ves. 148; *Stone* v. *Hackett,* 12 Gray, 227; Perry on Trusts, sec. 99.

The decree of the court below will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*

Mr. CHIEF JUSTICE SCOTT, dissenting:

Dissenting as I do, from both the conclusion and reasoning in this case, I feel at liberty to state my views of the whole case.

It is seen the bill in this case was brought in the Superior Court, by Fanny H. Rexford, since deceased, against Maria Huntington, Julia Rexford, Fayette Rexford, Norman B. Rexford, C. Caroline Massey, Henry H. Massey and Ephraim F. Dennison. The object of the bill was to set aside a deed, bill of sale, and a declaration of trust, made by Heber S. Rexford, Jr., now deceased, in which complainant, who was then his wife, joined in the execution, to Henry H. Massey,

as trustee for the grantors, and Ephraim H. Dennison, as successor in trust. The real estate conveyed consisted of about five acres, and the personalty consisted mainly of life policies and other choses in action, the whole property, both real and personal, being of near the value of $7500. The bill of sale and declaration of trust, with the deed, were all executed on the 11th day of February, 1882, and were all acknowledged before a notary public, both by Heber S. Rexford, and Fanny S. Rexford, his wife, the complainant in this bill. On the 12th day of May next after the execution of these several papers, Heber H. Rexford died, leaving him surviving, his widow, (complainant,) but no child or descendants of any child. Neither of the instruments executed by the parties was placed on record until the next day after the death of the husband. The declaration of uses and purposes for which the deed and bill of sale were made to Massey and his successor in trust, and which was executed at the same time and as a part of the same transaction, provided the trustee should have power to sell and deliver all or any portion of personal property mentioned in the bill of sale, for the uses and purposes therein expressed, and should have power to lease the real estate, or incumber it for such amounts as the trustee might think necessary to carry out the trust therein declared, and further provided, the proceeds of any such sales of the personal property, and any and all money arising from the leasing or incumbering of the real estate, should be held by the trustee named, or his successor in trust, upon the conditions following: First, to pay all necessary expenses of the trust; and second, to pay to Heber S. Rexford, Jr., during his life, the sum of $40 per month, as he might deem necessary for the comfortable maintenance and support of the said Heber S. Rexford, and Fanny H. Rexford, his wife, and in the case of the death of the husband before his wife, the like sum was to be paid to her at the same stated periods during her life, and on the death

of both husband and wife, it was made the duty of the trustee, or his successor in trust, to pay over and deliver any of the trust funds or property that might then remain in his hands, to the following named persons : To Maria B. Huntington, should she survive both donors, the sum of $250, but should she die first, then the $250 was to be divided as other trust property,—that is, one-fourth to Julia Rexford, one-fourth to Fayette D. Rexford, one-fourth to Norman B. Rexford, and the remaining fourth to C. Caroline Massey ; and it was expressly provided, the trustee should hold the legal title to such real estate, so conveyed to him, subject to the other trusts therein declared, in trust for the said Julia Rexford, Fayette Rexford, Norman B. Rexford and C. Caroline Massey, share and share alike, and on the final distribution of the residue of the estate it was made the duty of the trustee to execute to the several parties named, sufficient conveyances of such real estate, whereupon the trust created should cease and be determined.

Prior to her death, which occurred on the 27th day of October, 1882, Fanny H. Rexford made and published her last will and testament, in which she named Bessie B. Huntington as her sole devisee and legatee. The next day after the making of the will, this bill was filed. After the death of the original complainant, her will was duly admitted to probate, and since then this suit, by leave of court, has been prosecuted in, and been maintained in, the name of Bessie B. Huntington, the sole legatee named in the will. The answers of the several defendants were not under oath, and simply put in issue the principal allegations of the bill. On the hearing, the court found the principal allegations of the bill were sufficiently proved, and rendered a decree setting aside the deed, bill of sale, and declaration of trust, so far as the same affected the rights of the original complainant, and giving to the present complainant the same share of the estate of Heber S. Rexford, Jr., deceased, that his widow

would have taken under the statute had he died intestate, except as to the right of dower the widow might have had. It is as to this part of the decree that defendants have assigned error.

The transactions out of which this litigation arose are called in question mainly upon two points : First, that of undue influence in procuring the signature of the wife to the deed, bill of sale and declaration of trust, and that she was overreached and entrapped into the execution of the several papers; and second, that the transaction was nothing more than a testamentary disposition of his property made by Heber S. Rexford, and therefore not binding on his widow after his death. On the other hand, it is maintained the deed, bill of sale and declaration of trust were fairly and understandingly executed by the original complainant, without any improper practices being adopted to unduly influence her action, and that the transaction is an executed trust, and is therefore irrevocable by either party to it.

Construing the making of the deed, bill of sale and declaration of trust together, as simply a testamentary disposition of the property by the husband, and not as an executed trust, then it is not binding on his surviving widow, and, on its being set aside as to her, she would take as in case of intestacy. Undoubtedly, the law is, where there is an executed trust and nothing remains for the donors to do, it is irrevocable. But it is otherwise as to the mere testamentary disposition of property, either real or personal. The donor, it is understood, may at any time revoke it, and recall all he has done. In that respect it is no more binding than a will, which, of course, is subject to change or revocation at all times, and the proposed beneficiary can not complain. In this case, defendants claiming the estate paid no consideration. If they take at all, it is simply as donees of the bounty of their deceased kinsman, as under a will, and not otherwise. In that respect it may be said both parties now claiming the

property stand in the same relation to it. Neither of them has any equities in his or her favor arising out of any valuable consideration.

Much light will be shed on the subject of the inquiry necessary to be made, by ascertaining the exact condition of the parties at the time the several instruments were executed. The parties had been married about five years. They had had two children, both of whom had died in infancy, so that at the date of these transactions they were childless. Both of them were in very feeble health, being afflicted with consumption, in its last or fatal stages. The witnesses say it was difficult to tell which of them was most feeble. It was apparent to all their friends, and perhaps to themselves, that neither one could live but a short time, and their fears proved to be true. Both of them were unable to do any labor. The husband, for some time before the execution of these papers, had been unable to speak otherwise than in a whisper. He had been advised by his physician, what he must have known himself, that he could live but a brief time. Shortly before the making of the deed and other papers, Heber, with his sister, Mrs. Massey, made a visit to their brother at Centralia. His wife was left or remained at home. While there, the subject of what disposition was to be made of the property seems to have been considered, and the advice of a lawyer taken. Immediately after their return to Blue Island, where the parties resided, Massey, at the request of his brother-in-law, Heber S. Rexford, had the deed and other papers prepared by a lawyer in Chicago for execution. Heber was himself too feeble to go into the city to give the matter any personal attention. It was managed for him by Massey, who was to be, and was appointed, trustee. Although the papers were all signed and acknowledged on the 14th day of February, 1882, yet they were not recorded until the next day after the death of the husband, which occurred on the 12th day of May next thereafter. It is probable the papers,

after they had been executed, remained in the hands of the trustee named, but how that may have been does not distinctly appear. It does not appear, however, he attempted to do anything towards the execution of the trust prior to the death of the truster. Equity, discarding unmeaning and useless forms, will look at the substance of the act done and the intention with which it was done, and carry out that intention. No matter what form the transaction puts on, equity will penetrate it, and discover the true purpose of the parties to it, and will construe it accordingly. That ought to be done in this case. The trust declared in this case may have been made in the form of an executed trust, with a design to conceal the real intention of the party to make a testamentary disposition of his property. If so, the form adopted ought not to be permitted to stand in the way of a true construction, otherwise great injustice might be done simply by adopting a covering to conceal the real purpose the party intended to accomplish. That, of course, the law will not permit. The trust attempted to be declared in this case ought not to be permitted to stand simply because it may appear on the face of the instrument to be an executed trust. The circumstances ought to be examined, and if it shall be ascertained it is simply a testamentary disposition of the property, it ought to be so declared, without regard to the form in which it is expressed.

Applying these reasonable rules of construction, the case being considered admits of an easy solution. When the deed and bill of sale were executed and the trust declared, it was under the belief the death of both parties would soon occur. The husband had been so advised, and it was a matter that had been talked over, and neither one had the slightest hope of living beyond a few months. Certainly this arrangement was not made for the purpose of creating a trust for the benefit of either party for the brief period they expected to live. This is plain, from the fact it does not appear the

trustee was permitted to have any control or management of the property during the lifetime of the husband. Indeed, as has been seen, the papers were not placed on record until the next day after his death. This would seem to indicate that the husband held control, not only of all his property, but of the papers themselves, so long as he lived. There was unseemly haste in making the conveyances a matter of record after his death. There was, and could have been, no reasonable expectation his wife would live to derive any considerable benefit from the trust attempted to be created in her favor. That could not have been the object in placing the property in the hands of a trustee. What, then, was the purpose? Evidently it was the intention to cut off the interest the wife would have in the estate of her husband under the statute, and in that way save the property to *his* heirs to the exclusion of *hers.* A most inadequate provision was made for the maintenance and support for one in such feeble condition, even for the brief time it was known she could live. The purpose to make a testamentary disposition of his property is most obvious from what occurred when he and his sister visited his brother at Centralia, just prior to the making of the papers supposed to have created the trust. Counsel was taken by the brother whom they were visiting, at the instance of his sick brother, and they were advised if he made a will his wife would not be bound by it if she survived him—that she could renounce it and take under the statute. It was suggested, and so the advice ran, it might be done by conveying the property in trust. The inquiry, no doubt, was how the husband might make a testamentary disposition of his property so as to most effectually preserve it to his heirs, and in that way prevent any portion of it from passing to his wife under the statute, in case she should survive him. That must have been the reason why the making of a will was abandoned and the other mode adopted. No doubt the plan adopted was matured in the family council

before leaving Centralia, for it was executed as soon as practicable after decedent and his sister returned home.    This view is greatly strengthened by the fact that at the same time arrangements were set on foot to surrender a life or benefit policy which the husband had directed should be paid to his wife, and take in its stead a new certificate, payable to Massey on the death of the assured.    It will be remembered that Massey had not then been named trustee.    All this was done without the knowledge of the wife, and it does not appear that she was ever informed of it.

Conceding, then, the evident purpose was simply to make a testamentary disposition of his property by the husband, his wife was not bound by it after his death, notwithstanding she may have joined with him in the execution of the conveyances and in the trust declared.    It was a mere shift or device employed to cut off all interest the wife might have in the estate of her husband.    Such a scheme or device will meet with no favor.    She was in extreme ill-health, and it does not appear she was advised by her husband or any one else of the effect of the act she was doing in joining in the execution of the trust.    It would have been highly proper to have furnished her with professional advice as to her rights, and as to the effect of the instrument she was called upon to sign.    It is plain, from her subsequent conduct, she did not comprehend what she had done,—certainly not the legal effect of her act.    Unaided by friendly counsel, she was too feeble to resist any proposition that might be submitted to her by those interested in the scheme to be adopted.    A voluntary disposition of property by the husband, no matter what form is adopted, made with an evident intention and purpose to deprive the wife of her interest in it, as the law defines that interest, will find no sanction in the law.    It is such a legal fraud on her as the law will not tolerate.    The scheme adopted was simply to make such testamentary disposition of the property by the husband that

would deprive the wife of any share of his estate under the statute, and as it does not appear she was sufficiently advised of the effect of her action in consenting to it, she is not bound by what her husband did. On account of her extremely feeble condition, arising from a mortal sickness, she could not be charged with negligence in not procuring legal advice for herself, to enable her to resist what her dying husband, influenced, as he seems to have been, by his heirs, wished to have done. She had neither mental nor physical force to interpose much resistance, and she may have secured temporary rest by yielding to what it was desired she should do. One of two propositions is true : First, the trust attempted to be declared was simply a testamentary disposition of the property of the husband, made in view of death, upon no consideration, and therefore not binding on his wife after his death ; or, second, it was a voluntary alienation of his property, upon no valuable consideration, made with intent to deprive the wife of her share of her husband's estate under the statute, and was for that reason *mala fide*, and a fraud upon the law and upon the rights of the wife. In either case the law is, so far as the wife is concerned, the husband is to be regarded as having died seized of the property, and the widow will take the same portion as in case of intestacy. Although not entirely analogous, the reasoning in the following cases in a measure supports the views expressed : *Garnsey* v. *Mundy*, 24 N. J. Eq. 243 ; *Smith* v. *Smith*, 12 Cal. 216 ; *Thayer* v. *Thayer*, 14 Vt. 107.

As respects the benefit certificate in the Knights of Honor, which was renewed and made payable to Massey, it is claimed he would be entitled to the money under that certificate, outside of the trust, and would have been if no trust had been created. The argument in support of this proposition is, that decedent had a right to dispose of his own personal property, in his lifetime, without the consent of his wife. A satisfactory answer to the position taken is, he neither sold

it nor gave it to Massey. It was intended he should hold the proceeds, as he did the other property attempted to be assigned, in trust. Making the certificate payable to Massey, was simply a means adopted to facilitate the collection, and nothing more. The husband may not dispose of his personal property by mere voluntary assignment, founded upon no valuable consideration, with intent to defeat his widow of her distributive share under the statute, any more than he may his real estate. There is no reason in law for making any distinction in that respect.

In my judgment the decree of the lower court should be affirmed.