FLORENCE L. SHEER

*v.*

EMMA L. SHEER *et al.*

*Filed at Ottawa October 11, 1895—Rehearing denied March 10, 1896.*

1. WILLS—*effect of proof of testator's signature.* Proof of the testator's signature to a will is *prima facie* evidence of his having understandingly executed the same.

2. SAME—*what shows testator's instructions were followed in drafting will.* Failure to follow a testator's instructions in drafting a will is not shown by answering a question as to whether directions were followed, "Yes and no; I drew it as nearly like his directions as it could be drawn under the law," where it is also proved that the testator's proposed will violated the law against perpetuities, and that he then requested that a will be drawn as nearly like that as possible without violating the law.

3. SAME—*following testator's general instructions—effect of subsequent execution.* A will prepared at the request of a testator, even under general directions and afterwards executed in the manner provided by law, should not be set aside on the ground that he did not understand what it contained, except upon clear and satisfactory proof of that fact.

APPEAL from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

JOHN H. BRADLEY, for appellant:

The law, in the absence of all evidence, will presume that a person who executes a will or other instrument does so with knowledge of its contents. But this is a presumption which will readily yield to evidence tending to show such was not the fact. *Keithley* v. *Stafford*, 126 Ill. 507; *Reel* v. *Reel*, 1 Hawks, 267; *Purdy* v. *Hall*, 134 Ill. 308.

It is necessary that it be shown that the contents of the instrument were known to the decedent. *Chandler* v. *Ferris*, 1 Harr. (Del.) 454; *Hearne* v. *Ross*, 4 id. 51; *Harris* v. *Vandeveer*, 21 N. J. Eq. (6 C. E. Greene,) 561.

It is said in *Cleve* v. *Cleve*, L. R. 30 P. & D. 657: "That he knew and approved of the contents is a proposition implied in the assertion that a will was made by him, for if a man was to sign a paper of the contents of which he knew nothing it would be no will." *Hastilow* v. *Strobie*, L. R. 30 P. & D. 67; *Alter* v. *Atkinson*, id. 670; *Day* v. *Day*, 3 N. J. Eq. 549; *Tomkins* v. *Tomkins*, 12 S. C. L. 96.

In *Weir* v. *Fitzgerald*, 2 Bradf. 70, it was held that reading the will in presence of the witnesses was not essential if it appeared that the decedent knew its contents. Additional evidence is therefore required that the testator's mind accompanied the will,—that he knew what he was executing. *Chaffee* v. *Baptist M. Soc.* 10 Paige's Ch. 91; *Bennett* v. *Silliman*, 16 Barb. 211; *Vanpelt* v. *Vanpelt*, 30 Barb. 140; *Rollwagen* v. *Rollwagen*, 63 N. Y. 517.

J. EDWARDS FAY, for appellees:

It is never necessary to show that the will was read over to the testator, if it can be shown in other ways that he was aware of its contents. 1 Jarman on Wills, 36, note.

It is a general rule that on proof of the signature of the deceased he will be presumed to have known and approved of the contents of the instrument he has signed. 1 Taylor on Evidence, 178.

No matter what evidence may be forthcoming to show that some passage has crept into the instrument by mis-

take of the draughtsman, that will not vitiate the will. 1 Taylor on Evidence, 178, and cases in notes.

In *Harris* v. *Vandeveer*, 21 N. J. Eq. 561, among the several ways specified by which a knowledge of the contents of a will may be shown, the court enumerates as one of them, "from its having been drawn according to his instructions."

When the main purposes and intentions of the testator are ascertained, if particular expressions are found in the will which are inconsistent with such intention, or which indicate an intention which the law will not permit to take effect, such expressions must be discarded or modified, so as to carry into effect, as far as possible, the rule. *Harrington* v. *Harrington*, L. R. 3 Ch. 564, and 37 id. 593; *In re Wray*, 10 Irish Rep. 266.

If the testator might have seen, the presumption is he did see the witnesses sign. So, too, if he might have read and known the contents of the will the presumption is he did read and know. 1 Taylor on Evidence, 180.

The presumption is not rebutted by the defective memory of the attesting witness. *Vinnecombe* v. *Butler*, 3 S. & T. 580.

When a will appears, on the face of it, to have been duly attested, and surrounding circumstances imply that this was so, the contrary evidence of one attesting witness is not sufficient to rebut the presumption. *Wright* v. *Rogers*, 17 W. R. 833.

No presumption is to be indulged against the intelligent execution of a will prepared by the testator's solicitor, from the circumstance that he was unacquainted with its contents when he signed it, after having declared himself satisfied with it, and after having had ample opportunity to acquaint himself with its contents. *Ayers* v. *Ayers*, 43 N. J. 565; *Mason* v. *Williams*, 6 N. Y. 479.

It is not indispensable that this will should have been read to or by the testator, if it appears that he understood and approved it. *Crumb's Will*, 6 Denio, 478.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a suit in chancery to set aside the will of one Charles Sheer. The case was heard upon the bill, answer, replication and proofs, and the bill dismissed at complainant's costs. The complainant, who prosecutes this appeal, is a daughter of the deceased and one of his legatees. Several grounds for avoiding the instrument probated as his last will are averred in the bill, but only two of them are insisted upon here, viz.: First, the testator did not know the contents of the instrument when he executed it; and second, its execution was procured by undue influence.

On and prior to August 7, 1888, Charles Sheer resided in the city of Chicago. On that day he executed, in conformity with section 2, chapter 148, of our statutes, his last will and testament. He signed it at the International Bank of Chicago, the cashier and assistant cashier witnessing it. He at the same time left it in the bank for safe keeping, where it remained until after his death, (September 16, 1891,) when it was duly admitted to probate in Cook county, and the executors therein named duly qualified.

The rule of law is, "where the testator is shown to have executed an instrument as his will, being in his right mind, and there is nothing of fraud or imposition, it will be presumed that he was aware of its contents. The general rule is, that proof of the testator's signature to the will is *prima facie* evidence of his having understandingly executed the same.—*Weigel* v. *Weigel,* 5 Watts, 486; *Beall* v. *Mann,* 5 Ga. 456." See *Yoe* v. *McCord,* 74 Ill. 33, (on p. 43.)

One of the witnesses to this will died prior to the hearing of the cause below. The surviving witness testified, referring to the instrument: "I signed it at the request of Charles Sheer, as a witness to his last will. I saw him sign it and he saw me sign it. Charles Sheer, Joseph B.

Lowenthal and myself were present. It was August 22, 1888. Mr. Sheer was about fifty-eight years old.   *   *   * He was of sound and competent mind and memory. He said this was his last will, and requested Lowenthal and myself to sign it as witnesses. Lowenthal died about a month ago."

All of the testimony in the case is to the effect that deceased was a thoroughly competent business man, possessed of all his natural faculties, and of strong will. The contention that he did not understand the contents and provisions of the instrument is based solely upon the claim that it was not written in conformity with his directions, and that he did not read it or hear it read, nor receive any explanation of its contents, before signing it. The question therefore is, whether, under the foregoing rule of law, the complainant has, by satisfactory proof, overcome the presumption that it was understandingly executed.

The instrument was written by Charles Whitney, an attorney at law, in his office at Waukegan. On the day preceding its date, deceased, accompanied by his brother-in-law, Henry Horton, who resided at Lake Forest, called on Whitney and requested him to draft his will. He then produced a memorandum as to how he wished to dispose of his property and submitted the same to the attorney, who advised him that a will made in conformity therewith would be void under the statute against perpetuities. After some conversation he left directions to prepare a draft of his will and returned to his home. Whitney testified: "His directions were that he wanted the will as near like the memorandum as I could make it and have it according to law. I think I made a memorandum of the consultation as we conversed over the matters. I jotted it down in some way. That was in relation to the will and draft thereof, and the will was drafted therefrom." In answer to the question, "Do you say that you drew the will, as it was finally drawn and signed, in accordance

with such directions, written and verbal, given to you?" he answered : "In answering that question I would have to say both yes and no. I drew it as nearly like his directions as it could be drawn under the law." It appears both from the evidence of Whitney and Horton that the conversation in regard to the making of the will, between deceased and Whitney, continued an hour or more, and that while the deceased had a memorandum prepared by himself, which, as he was told, could not be followed, a memorandum was also made by Whitney from the conversation then had between the parties, and we think it clear, from all the testimony, that the will was drafted in conformity with the directions given by the deceased at that time. True, it was not drafted according to his own memorandum, because that could not be legally done ; but it was made as nearly so as the law would permit, and that is what he desired to be done.

Counsel for appellant seems to contend that because Whitney answered the question above quoted both yes and no, he therefore shows that he did not draft the will according to the instructions of the deceased. But his testimony, taken as a whole, bears no such construction. When he says, "I drew it as nearly like his directions as it could be drawn under the law," he shows that he drew it in strict conformity with his instructions.

After Whitney prepared the will as executed, he sent it in an envelope, with a letter of explanation, to Horton, to be delivered to the deceased. On the next day he went to the International Bank, where he met Sheer and handed him the envelope. It may be conceded that Horton's testimony proves that the deceased did not read the will over before signing it, but we do not agree with counsel for appellant in his contention that Horton testified the letter accompanying the same was not read. He testified on this subject, among other things: "I do not know that there was a letter from Mr. Whitney to Mr. Sheer in the package. I do not know whether Mr. Sheer

found the letter and read it, or not." The letter referred to explained the provisions of the will, so that from its contents, together with the conversation had in the attorney's office and the memorandum there made, the testator might fully know and understand the contents of the will. The most that can be claimed from the testimony of all the witnesses is, that it leaves it doubtful whether the testator fully understood the contents of the will or not; but this being true, the presumption of law that he did understand it still obtains, and the will must stand.

. Without attempting to review the evidence at length, we are satisfied that it cannot be said that it establishes the fact that Sheer was, at the time he executed the instrument and requested its attestation by the witnesses, ignorant of its contents and provisions. Where a will is shown to have been prepared at the request of a testator, even under general directions, and is afterwards executed in the manner provided by law, it should not be set aside on the ground that he did not understand what it contained, except upon clear and satisfactory proof of that fact. The fact that he did not make bequests as his sister wished them made, or so as to include her, does not affect the validity of the will or prove that he did not understand it.

As to the charge of undue influence, it need only be said the testimony wholly fails to sustain it. Mere advice, or even persuasion, to induce the making of a will in a particular way is never sufficient to avoid it on the ground of duress or undue influence. But there is no proof in this case that any influence whatever was brought to bear upon the testator to induce him to make his will in the manner in which it was made.

On the whole record, we are satisfied that the circuit court properly dismissed the bill, and its decree will accordingly be affirmed.          *Decree affirmed.*