LULU FRENCH *et al.*

*v.*

HARRIET FRENCH.

*Opinion filed April 17, 1905—Rehearing denied June 8, 1905.*

1. WILLS—*verdict not disturbed unless clearly wrong.* The verdict of the jury, approved by the court, in a proceeding to contest a will, where the evidence upon the questions of testamentary capacity and undue influence is conflicting, will not be disturbed, on appeal, unless clearly against the weight of the evidence.

2. SAME—*what proper for consideration of jury.* In determining the questions of testamentary capacity and undue influence with reference to an alleged codicil to a will, the inherent evidence of those facts found in the paper itself, taking into view the state of the testator's property, family and the claims of the particular individuals thereof upon his bounty, is proper for the consideration of the jury.

3. APPEALS AND ERRORS—*when alleged error in refusing instructions is not presented.* Alleged error in refusing instructions is not presented for review on appeal in a will contest case where no complaint of such refusal was made in the motion for new trial.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

GORDON A. RAMSAY, for appellants.

PHELPS & CLELAND, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the appellee in the superior court of Cook county to set aside the probate of a codicil to the will of Rensselaer W. French, Sr., deceased, on the ground of mental incapacity and undue influence, which codicil, together with the will of said Rensselaer W. French, Sr., had been admitted to probate in the probate court of Cook county. Answers and replications were filed,

and the issues having been submitted to a jury, the jury returned a verdict that the writing produced to them was not a codicil to the last will and testament of said Renssalaer W. French, Sr., deceased, and the court, after overruling a motion for a new trial, entered a decree in accordance with said verdict, and an appeal has been prosecuted from the superior court to this court.

It appears from the evidence that Renssalaer W. French, Sr., a retired minister of the gospel, on March 14, 1896, made his will; that on March 18, 1901, the paper claimed to be a codicil thereto was signed by him; that he died February 24, 1902, at the age of eighty-six years; that both will and codicil were admitted to probate in the probate court of Cook county on April 28, 1902; that he left him surviving the appellee, his widow, who was his second wife and with whom he had lived for many years, and Albert C. French, his son and only heir; that about the time he executed his will he gave to his son something like $16,000 worth of property, which represented about one-half of his estate; that by his will he gave to his wife the house and lot known as No. 301 Winchester avenue, Chicago, in which they lived, to his son and daughter-in-law the house and lot known as No. 303 Winchester avenue, in which they lived, and to his executor, in trust for the benefit of his grandchildren, the house and lot known as No. 305 Winchester avenue, which was all his real estate, and to his wife his household property and $1000 in cash, and the balance of his estate to his executor in trust for the benefit of his said grandchildren. Two or three years prior to his death the testator had a stroke of paralysis, after which, by reason of his extreme age and diseased condition, he was very feeble in both body and mind. About eleven months before his death Renssalaer W. French, Jr., a son of Albert C. French and grandson of Renssalaer W. French, Sr., went to the testator's house, and in the absence of his wife the testator executed the following writing:

*"March 18, 1901.*

*"To all whom this may concern*: Know that I wish to state that when making my will some time ago it was my wish at that time, and is now, that my wife, Harriet French, should have left to her the $1000 which was originally hers, and in addition a life interest only in the property at No. 301 Winchester avenue.

R. W. FRENCH.

F. H. ATKINSON,
R. W. FRENCH, Jr."

This is the instrument admitted to probate as a codicil to the last will and testament of said Renssalaer W. French, Sr. Said Renssalaer W. French, Jr., was a witness to said paper and testified in the probate court at the time the same was admitted to probate, which testimony was introduced by the appellants on the trial of this case. He testified, in substance, that he went to his grandfather's house in the absence of his grandfather's wife; that he talked with his grandfather in regard to finances, and that his grandfather mentioned his will, and when asked about its provisions, stated that they were not such as he desired at the time of making it, but that it was made to please his wife; that the property at No. 301 Winchester avenue had been left to his wife, together with $1000, outright, and he did not want to do so at the time but did so because Mr. Gault informed him that the law would give her that anyway; that it was not his will to do that, but he merely did it because Mr. Gault informed him that the law would give it to her and this would save trouble and court costs; that he never before discussed with his grandfather the propriety of making a codicil, and that this was the first time that he knew that he had made a will. He then asked his grandfather if he was willing to make out a statement of his wishes at the time his will was signed and sign it in the presence of witnesses, and he said he was. He went and got some paper and his grandfather dictated the writing word by word. After it was written out he handed it to him to read. He then signed his name to it without any assistance or having his hand held; that witness read the paper aloud when it was finished and then handed it to his grandfather to read

for verification.    After the testator signed the writing, Mr.
Atkinson, whom he had called in for that purpose, signed it,
and he signed it, and his grandfather charged him to take
good care of the paper; that he carried the paper away with
him and gave it to his father, Albert C. French.    It also ap-
pears that after the death of Renssalaer W. French, Sr., the
executor named in the will, who had the original will in his
possession, opened and read it to the widow and Albert C.
French, and Albert C. French said nothing at that time with
reference to the testator having executed a codicil, which, ac-
cording to the testimony of his son, at that time was in his
possession, and the executor or appellee was not informed of
the existence of the paper until several weeks after the death
of Renssalaer W. French, Sr.    The witnesses, both for the
appellants and appellee, agree that testator was a very feeble
old man for some years prior to his death, and the witnesses
for the appellee testify that he was mentally incapacitated to
make a will after he became afflicted with paralysis, which
was two or three years prior to his death, and long before
said paper which is claimed to be a codicil to his will was
executed.

It has been repeatedly held by this court that where the
evidence is conflicting upon the question of the mental ca-
pacity of a testator to make a will or whether the execution
of a will was brought about by undue influence, a court of
review will not disturb the verdict of a jury which has been
approved by a trial court unless the verdict is clearly against
the weight of the evidence.    In *Piper* v. *Andricks,* 209 Ill.
564, it was said: "A large number of witnesses were called
who testified they were of the opinion the testator had testa-
mentary capacity, while an equal or greater number testified
in their opinion he had not.    The jury heard these witnesses
testify, and it was pre-eminently within their power to deter-
mine which were the more worthy of belief.    The trial judge
also saw and heard the witnesses and approved of the verdict
of the jury.    In that state of a record this court will not

disturb the verdict unless it is manifestly against the weight of the evidence."

We have read the evidence of all the witnesses who testified in this case, and are entirely satisfied with the verdict rendered by the jury upon both issues submitted to them and the action of the trial court in approving the same. The inherent evidence of undue influence and mental incapacity found in the paper which was admitted to probate as a codicil to said will, taking into view the state of testator's property, family and the claims of the particular individuals thereof upon his bounty, is most manifest, which fact was proper for the consideration of the jury. In *McCommon* v. *McCommon,* 151 Ill. 428, on page 440, it was said: "In *Patterson* v. *Patterson,* 6 Serg. & Rawle, 55, the question being as to the validity of a will, Chief Justice Gibson said: 'Where a will is impeached for imbecility of mind of the testator, together with fraudulent practices by the devisees, the intrinsic evidence of the will itself, arising from the unreasonableness or injustice of its provisions, taking into view the state of the testator's property, family and the claims of particular individuals, is competent and proper for the consideration of the jury.' So in *Clark* v. *Fisher,* 1 Paige, 171, the court, upon the authority of the case last cited, held that, in forming an opinion of the state of the testator's mind, it is proper to take into consideration the reasonableness of the will in reference to the amount of his property and the situation of his relatives."

The testator was old and feeble and had for many years been cared for by his wife, whom he seems to have trusted implicitly and who appears at the time of the testator's death to have been quite aged. At about the time he made the will he turned over to his son one-half of his estate and by the will gave him and his family at least two-thirds of what remained. For him afterwards to change his will, without consultation with his wife or the attorney who had represented him for years and whom he had named as executor of his will, and

without their knowledge, so that he left his wife, in her old age, possessed only of a few household goods, $1000 in money, (which it does not appear there was personal property to pay,) and a house to live in but upon which she could not raise any money for her support, in view of the manner in which the execution of said paper was obtained and the fact that the knowledge of its execution was kept from the appellee and the executor for some weeks after the death of the testator, might readily have led the jury and the trial court to the conclusion that its execution was obtained by undue influence, and that the testator, when he executed it, was lacking in mental capacity. In any event, we are not disposed to disturb the verdict of the jury, or the action of the court in entering a decree thereon, for lack of evidence to support the finding of the jury.

It is also claimed the court erred in admitting improper evidence. No ruling of the court upon the admission of evidence has been pointed out which, in our judgment, would justify a reversal of the decree.

It is also urged that the court refused to give certain instructions offered on behalf of the appellants which should have been given. In the motion for a new trial no complaint was made of the action of the court in refusing to give to the jury instructions offered on behalf of the appellants, and the question of whether or not said instructions were properly refused is not presented for review in this court. *Call* v. *People,* 201 Ill. 499.

Complaint is also made that improper instructions were given on behalf of the appellee. We do not think the criticisms made upon the instructions given on behalf of appellee are well founded, but think the jury were fairly instructed as to the law of the case.

We are of the opinion the verdict of the jury in this case was right upon the facts and that the decree of the trial court based thereon should be affirmed, which is accordingly done.

*Decree affirmed.*