MARY COMPHER *et al.*

*v.*

CAROLINE MARK BROWNING *et al.*

*Opinion filed February 21, 1906.*

1. WILLS—*what does not tend to show undue influence.* That
the testatrix, who was a woman of wealth and having many busi-
ness interests and much property to look after, employed the man
whom she afterwards made one of the executors of her will as her
agent and gave him full power of attorney to act for her, does not
tend to show undue influence by him over her, where she had pre-
viously had other agents for the purpose of managing her property,
since the execution of such power of attorney would be a proper
way of authorizing the agent to demand possession of her property
so far as it was in control of the former agents.

2. SAME—*fact that confidential agent procures will to be drawn
does not show undue influence.* The fact that a confidential agent
of the testatrix draws her will or procures it to be drawn, in which
he is appointed one of the executors, entitled, under its terms, to
such compensation as the executors might deem just and reason-
able, may be a suspicious circumstance calling for careful scrutiny,
but does not, of itself, invalidate the will, there being no proof that
such agent practiced any fraud or imposition or exercised any un-
due influence in the making of the will.

3. SAME—*fact that testatrix is uneducated does not justify set-
ting aside her will.* Lack of education and culture on the part of
the testatrix, who is otherwise a woman of strength of mind and
intellect and business capacity, even though she is unable to read,
does not justify setting aside her will, where she was able to and
did sign her name to the instrument.

4. SAME—*what does not show that will is not that of the tes-
tatrix.* Employment, by an agent of the testatrix, of an attorney to
draw the will who lived in another town than where the testatrix
resided, does not show that the will was rather the production of
the agent than of the testatrix, where the testatrix herself did not
employ local attorneys in her business, and where the provisions of
the will as made correspond with her previous declarations as to
her intentions in disposing of her property.

5. SAME—*testatrix is presumed to have known contents of will.*
A will duly executed by the testatrix, who is shown to be a woman
of sound mind, will not be held invalid for want of proof that the
will was read by her or to her, even though the will is prepared at

the direction of her confidential agent but who is not shown to have practiced any fraud or imposition, since proof of the signature of the testatrix is *prima facie* proof she knew the contents of the will.

6. EVIDENCE—*when evidence tending to show mental condition is inadmissible.* Proof of statements made by the testatrix to a witness is not admissible in a proceeding to contest the will, as tending to show the mental condition of the testatrix, where the contestants have repeatedly admitted in open court that the testatrix was of sound mind and memory.

7. SAME—*proof of declarations inconsistent with will is not admissible.* Proof of declarations of the testatrix to a witness with reference to an intended disposition of her property inconsistent with the disposition made thereof by the will is not admissible, there being no question as to the fact that the testatrix was of sound mind and memory.

8. SAME—*proof that testatrix was easily influenced is not admissible.* Proof that the testatrix was a woman who was easily influenced and susceptible to flattery is not admissible in a proceeding to contest a will, that matter being one of mere opinion or conclusion on the part of the witness.

9. INSTRUCTIONS—*when instruction excluding issue of mental capacity is proper.* An instruction in a will case excluding the issue of mental capacity of the testatrix because the contestants had admitted in open court that she was of sound mind and memory is not error, even though there are minor parties who could not be bound by such admission, where the evidence clearly shows, without contradiction, that the testatrix was of sound mind and memory.

10. SAME—*when instruction as to proof of undue influence is proper.* An instruction in a proceeding to contest the will of an admittedly sane person upon the ground of undue influence is proper which holds that it is not sufficient to set aside the will that the facts and circumstances proven are consistent with the hypothesis of undue influence, but it must be shown that such facts and circumstances are inconsistent with a contrary hypothesis.

11. SAME—*instruction stating that burden of proof shifts to proponents is improper.* In a proceeding to contest a will for undue influence of one of the executors, an instruction is improper which holds that if the jury find that confidential relations existed between such person and the testatrix, the burden of proof shifted to the proponents to show that the alleged will was the free and voluntary act of the testatrix.

12. APPEALS AND ERRORS—*when record of another proceeding cannot be considered—release of errors.* On writ of error to review a decree upholding a will, the record of a subsequent com-

promise suit by which certain of the parties to the suit to contest the will had accepted the provisions of the will and had agreed to terminate the litigation cannot be considered, where no plea of release of errors was filed in the proceeding sought to be reviewed.

WRIT OF ERROR to the Circuit Court of Carroll county; the Hon. JAMES S. BAUME, Judge, presiding.

This is a bill, filed on July 13, 1901, in the circuit court of Carroll county to set aside the will of Caroline Mark, deceased. The bill is filed by Mary Compher, a half-sister of the deceased testatrix, and certain other persons, who are her nephews and nieces and grand-nephews and nieces, against Caroline Mark Browning, and others, devisees and legatees under her will, and also against Oscar F. McKenney and Frederick S. Smith, executors of her last will. Some of the complainants are minors, suing by a next friend, and some of the defendants are minors, for whom a guardian *ad litem* was appointed. As appears from the allegations in the bill and the proofs introduced, Caroline Mark, the testatrix, executed her will March 24, 1894, when she was about seventy-four years old. She was at that time a widow, her husband having died in 1869. She died testate on April 27, 1900, leaving no husband or children, or descendants of children, but leaving said half-sister, and certain nephews and nieces and grand-nephews and nieces, as her only heirs-at-law. Her will was admitted to probate in the probate court of Carroll county on June 4, 1900, and letters testamentary were issued thereon to said McKenney and Smith. By her will Caroline Mark, the testatrix, devised and bequeathed to the defendants below, Caroline Mark Browning, Gertrude Mark Browning, and Annie Mark Burns, afterwards the wife of William Tipton, certain real and personal property of the value of $40,000.00; to the complainants, Annabelle Hull, Laura V. Paugh, William Russell, Jane Gable Countryman, Nathaniel Russell, William Wade and Nancy Ellen Sisler, nieces and nephews, realty and personality, valued at $60,-

ooo.oo; to Charles Hull and Albert Hull, $500.00 each; to Mary Ann Warfield and Elizabeth Rinehart, who has since died, $100.00 each; and the remainder of her estate, amounting in value to some $300,000.00 or more, to Oscar F. McKenney and Frederick S. Smith, as trustees for the purpose of building and maintaining a home for the aged women of Carroll and adjoining counties.

The bill alleges and charges that Caroline Mark, at the time she executed the instrument in question, was not of sound mind and memory, but of weak and unsound mind, and in her dotage; that she was illiterate and aged and incapable of managing her estate or of making any just or proper distribution thereof; that Oscar F. McKenney was in complete control and possession of her money and securities, amounting to over $400,000.00, and that she had no conception of the value of her estate; that he had absolute control and dominion over her mind, and through fraud, falsehood and misrepresentation, induced her to execute the instrument, and dictated its terms, and that she did not understand its contents.

Subsequently, on December 10, 1901, by amendment to the bill, Annabelle Hull, Laura V. Paugh, William Russell, Emily J. Countryman, Nathaniel Russell, William Wade and Nancy Ellen Sisler, devisees and legatees under the will, were made defendants thereto instead of complainants.

McKenney and Smith, executors, filed separate answers, in which they admit that the bequests and devises were made and the will admitted to record as set forth in the bill, but aver that the testatrix was of sound mind when she executed her will; that she was a woman of vigorous intellect, knew the objects of her bounty, and was capable of managing and disposing of her estate. They deny that McKenney resorted to falsehood and misrepresentation to induce the execution of the will, or that the testatrix was under any improper restraint, or undue influence, when she signed it. They admit that McKenney was her agent and in control and possession

of her moneys and securities, but state that he always followed her directions in the management of her estate. A guardian *ad litem* was appointed for the infant defendants, who appeared and answered for them, submitting their rights to the protection of the court. To this answer and the separate answers of the executors replications were filed; and defaults were entered against the other defendants, and the bill taken as confessed by them.

Caroline Mark, the testatrix, resided in the city of Mount Carroll, Carroll county. Early in 1893 she owned, among other property, stock in the First National Bank of Mount Carroll of the market value of about $30,000.00. At that time Oscar F. McKenney was connected with the Carroll County Bank, and on April 7, 1893, Mrs. Mark, the testatrix, executed to him a power of attorney "constituting him her lawful agent and custodian of all her personal estate, consisting of money, notes, mortgages, bonds and securities, and granting unto him full power to properly and safely lend and invest the same or the proceeds thereof in her name, and giving and granting unto him full power and authority to do and perform every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully for all intents and purposes as she might or could do if personally present," etc. As her agent thus constituted, McKenney came into possession of her money and securities, then valued at about $300,000.00, and was in possession of the same at the time of her death. Her will was drawn by an attorney, named A. F. Wingert, who lived in Savanna, a city in Carroll county. Wingert was employed by McKenney to draw her will. About a dozen conferences occurred between McKenney and Wingert in regard to the drawing of the will, and, after it was prepared by Wingert, it was forwarded to McKenney at Mount Carroll. By the terms of the will, the executors and trustees, McKenney and Smith, are not required to give bond, and it is therein provided as follows: "It is my will that my estate be charged with the payment

of such reasonable compensation to the said Oscar F. Mc-Kenney and Frederick S. Smith as they may deem just and proper, according to the time and attention they may severally devote to the affairs of my estate." The executors and trustees are also given power to appoint their own successors. On March 18, 1902, issues of fact were made to be tried by a jury. As to the form of the verdict the court submitted to the jury the. following: "The following issues of fact are submitted to you for determination in this case: First: Is the writing read in evidence, purporting to be the last will and testament of Caroline Mark, deceased, the last will and testament of said Caroline Mark? Second: Was the writing read in evidence, purporting to be the last will and testament of Caroline Mark, deceased, caused to be executed through the undue influence of the defendant, Oscar F. McKenney, exercised on said Caroline Mark? Third: Did the said Caroline Mark, at the time of the execution and attestation of the said writing read in evidence, purporting to be the last will and testament of the said Caroline Mark, know and understand the contents of said instrument, purporting to be her last will and testament? If you find for the proponents upon the first issue, the form of your verdict will be: 'We, the jury, find that the writing read in evidence purporting to be the last will and testament of Caroline Mark, deceased, is the last will and testament of said Caroline Mark.' If you find for the contestants upon the first issue, the form of your verdict will be: 'We, the jury, find that the paper read in evidence, purporting to be the last will and testament of Caroline Mark, deceased, is not the last will and testament of said Caroline Mark.' In determining the second and third issues, you will designate the same as follows: If you determine the second issue in the affirmative, you will say: 'As to the second issue, we answer, Yes.' If you determine the second issue in the negative you will say: 'As to the second issue we answer, No.' If you determine the third issue in the affirmative you will say: 'As to

the third issue, we answer Yes.' If you determine the third issue in the negative you will say: 'As to the third issue, we answer No.' " The verdict of the jury was as follows: "We the jury find that the writing read in evidence purporting to be the last will and testament of Caroline Mark, deceased, is the last will and testament of said Caroline Mark. As to the second issue, we answer, No. As to the third issue, we answer, Yes."

Motion for new trial was made and overruled, and on March 25, 1902, a decree was rendered in accordance with · the verdict of the jury, and dismissing the bill for want of equity, and requiring that the contestants pay the costs, and that execution issue therefor, to the entry of which decree exception was taken by the complainants.

The present writ of error is prosecuted from the decree so entered by the trial court.

PIERSON, PEASE & DEYOUNG, (ENOCH E. McKAY, and FREDERIC R. DEYOUNG, of counsel,) for plaintiffs in error.

W. H. A. RENNER, and FREDERICK S. SMITH, (J. C. SEYSTER, of counsel,) for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first point made by plaintiffs in error in favor of a reversal of the decree below, sustaining the validity of the will of the testatrix, Caroline Mark, deceased, is that the verdict and decree are not sustained by the evidence.

As to the allegation in the bill, that the testatrix, at the time of the execution of her will, was not of sound mind and memory, that allegation is not sustained by the proof. On the contrary, the overwhelming weight of the testimony shows, that, when she made her will, Mrs. Mark was a woman of remarkably strong intellect, and of unusually sound

mind and memory. Indeed, no proof was introduced by the contestants for the purpose of showing that she was not of sound mind and memory. But, in the course of the trial, counsel for the contestants admitted that she was a woman of sound mind and memory, and disclaimed any intention of making any insistence to the contrary. If, therefore, the verdict of the jury is not sustained by the evidence, it must be that the verdict is not so sustained, so far as it refers to the question of undue influence. The main inquiry, therefore, so far as the facts are concerned, is whether there was sufficient evidence, showing that the will was not obtained by undue influence on the part of Oscar F. McKenney, one of the executors and trustees, to justify the jury in finding the verdict, which they returned. The testatrix was some seventy-three or seventy-four years of age, when she made her will on March 24, 1894, and lived some six years thereafter, dying at the age of about eighty years. The evidence does not show that, during the period of her life, after the execution of her will, she made any complaint in regard to its provisions, or expressed any regret that it had not been made differently.

One of the circumstances, insisted upon as showing undue influence, is the fact that Mrs. Mark, in the winter or spring of 1893, employed Oscar F. McKenney to act as her agent in the management of her personal property, and executed to him the power of attorney, dated April 7, 1893, mentioned in the statement preceding this opinion. The proof tends to show that Oscar F. McKenney was the president or manager of a bank in Mount Carroll, and was a business man of ability and large experience. The testimony shows that he stood high in the community as a man of integrity and business capacity. Mrs. Mark had a large amount of personal property. An inventory of her estate was introduced in evidence, and is in the record. This inventory shows that, at that time, she had notes, mortgages, bonds and other securities, good and collectible, aggregating the

sum of $320,782.06, and other choses in action, good and collectible, amounting to $385.50; that she had cash on deposit in the Carroll County Bank of Mount Carroll, $25,096.67; cash at her residence, $1104.90; two hundred shares of stock of the First National Bank of Mount Carroll, valued at $32,000.00; notes, securities and choses in action, listed as desperate, amounting to $5626.28. The inventory also shows that she owned more than two hundred and twenty cattle, about four hundred hogs, more than twenty horses, and a large amount of grain, farming implements, and other personal property. In view of her advanced age, and in view of the amount and character of the personal property thus owned by her, it was natural that she should select some competent business man to manage her affairs for her. The proof shows that, in addition to the personal property in question, she owned, from 1892 to 1896, in the neighborhood of sixteen hundred acres of farming land, exclusive of timber, and other real estate in Mount Carroll, Savanna, and elsewhere. She conducted farming operations on some of these lands during the time in question. She employed McKenney to assist her in handling her loans and moneys, and another agent to help her in looking after her farming operations. In addition to this, the testimony shows that she had, before the appointment of McKenney, employed other agents to assist her in managing her personal and real property. One of these was named Ashway, with whom she appears to have had a litigation. Another was a man named Miles, and still another a man named Bucher. In view of the fact, that other agents had been employed to look after her affairs, and would therefore naturally be in the possession or control of much of her property, it was reasonable and natural that she should execute the power of attorney in question to the new agent, McKenney, in order that the latter might use such power of attorney as his authority for demanding the possession of her personal property from the other agents, so far as it was still under the control of the latter.

It is to be noted that McKenney was not appointed by
the will as the sole executor and trustee thereunder, but that
associated with him was Frederick S. Smith.   It is also to
be noted that no legacy or devise was made to McKenney,
or to Smith, by the terms of the will; and all the pecuniary
benefits, which they were entitled to receive from their posi-
tion as executors and trustees, were such compensation for
their services, as would be reasonable and just and proper.
It is true that the will charges the estate "with the payment
of such reasonable compensation to the said Oscar F. Mc-
Kenney and Frederick S. Smith, as they may deem just and
proper, according to the time and attention they may sever-
ally devote to the affairs" of the estate.   But the provision
in question would naturally be construed by any court, as
authorizing them to receive only such compensation for their
services in executing the trust, as the law itself would allow,
or as the court would determine to be reasonable.   It seems
from the evidence that McKenney himself desired the will to
be so drawn as that he would have an associate in the man-
agement of the interests of the estate, as he was himself in
ill-health, and had business of his own to attend to.   It also
appears that Mrs. Mark herself was consulted as to the choice
of Frederick S. Smith to act as co-executor and trustee with
McKenney.   The facts, that a confidential agent of a tes-
tator or testatrix has drawn the will, or procured it to be
drawn, and has been made executor and trustee thereunder,
may be suspicious circumstances, which call for additional
scrutiny as to the fairness of the transaction; but these facts
alone do not invalidate the will where all the other circum-
stances, developed by the evidence, show that there was no
fraud, or imposition, or attempt to exercise undue influence.
(Schouler on Wills,—2d ed.—sec. 245.)   In *Livingston's
Appeal from Probate,* 63 Conn. 69, it was held that the rule,
under which undue influence is inferred from a confidential
relation between the testator and the person procuring the
will, has no application where such person takes nothing

under the will; and that, where a lawyer, who has for a long time been the confidential adviser of a testatrix, draws her will, and by it is made executor of the will and a trustee under it, he is not to be regarded as taking beneficially under the will, but only as accepting duties under it which the testatrix imposes. In the case at bar, McKenney was only given power "to properly and safely loan and invest" the money and personal property of the testatrix, and had no power to convey real estate or release mortgages; and the proof shows that the testatrix herself executed such releases, whenever it was necessary to do so, up to the time of her death, and that she was consulted about, and informed of, all that took place in the management of her affairs.

We see nothing in the evidence to indicate that any undue influence was exercised over Mrs. Mark, arising out of the fact that McKenney acted as her agent, and that he was appointed executor by the terms of the will.

It is said that the testatrix was ignorant, and could not read. There is testimony, tending to show that she could read, and there is also testimony to show that she could not read. It is clearly proven that she could write her signature, and the witnesses of her will testify that they saw her sign the will. It is undoubtedly true that she was not an educated or cultured woman, and that, if she read at all, she read with difficulty. The testimony shows, however, that, when she was a girl, she went to school, and one of the witnesses testifies that the latter went to school with her in the city where she lived before she came to Illinois. We do not think that, in view of the overwhelming testimony as to the strength of her mind, and the clearness of her intellect and her capacity in the matter of looking after her property interests, her illiteracy is a sufficient circumstance to justify the setting aside of her will. In *Wombacher* v. *Barthelme,* 194 Ill. 425, it was held that testimony, that the testator could not read English writing, nor write except to sign his name, had no tendency

to establish either his inability to make a will, or his ignorance of the contents of the will which he executed.

It is said, however, that the fact, that McKenney went to Savanna in Carroll county, and procured a lawyer there to draw the will, instead of employing a lawyer in Mount Carroll where the testatrix lived, to do so, is a suspicious circumstance, and indicates that the will was rather the production of McKenney, than of the testatrix herself. The testimony tends to show that the testatrix preferred to employ lawyers, living away from the town where she resided. She had a litigation with a former agent, named Ashway, and, instead of employing a lawyer in Mount Carroll to try the suit for her, she employed Mr. Sheean, an attorney living in Galena. She had another litigation in Mount Carroll with a man, named Mertz, and she also employed Mr. Sheean of Galena to try the Mertz suit for her. The fact, therefore, that, in the important matter of drawing her will, she employed an attorney, living in another town in the same county, and only a short distance from Mount Carroll, is not of itself any indication that the will did not express her own wishes and intentions. It appears, on the contrary, that she was fully consulted as to the provisions of her will, and that the lawyer, who drew it, was fully informed as to her wishes in the matter. It also appears from the evidence that she was a secretive woman, and unwilling to have her neighbors informed about her private business matters. She said that her former agent, Bucher, had been advising her to have a will drawn, and she was afraid that if it was drawn in Mount Carroll and he knew of it, he would annoy her in reference to it. In addition to this, the evidence shows that the provisions of the will correspond exactly with her declarations in reference to the manner of disposing of her property, which she made to others before the drawing of the will. In *Wombacher* v. *Barthelme, supra,* it was said: "The fact, that its provisions corresponded with his declarations as to his intentions, is a circumstance, going to contradict the theory of

fraud or substitution." In the case at bar, the testimony
shows that the testatrix, Mrs. Mark, had indicated in conver-
sations with others, which of her nephews and nieces, or fos-
ter children, she intended to provide for, and she did provide
in her will for those thus mentioned in her conversations with
others. The evidence also shows that she frequently spoke
of her intention to found a home for old women, who were
poor and dependent on others. The provision of the will in
reference to this matter corresponds with her expressed in-
tentions upon that subject. Where a will is charged to have
been executed through undue influence, the declarations of
a testator, made before its execution, are admissible by way
of rebuttal to show his intention as to the disposition of his
property, upon the ground that a will made in conformity
with such declarations is more likely to have been executed
without undue influence, than if its terms are contrary to
such declarations. The declarations thus admissible are
those, which are in harmony with the provisions of the will
actually made, and not those which are opposed to such pro-
visions. (*Kaenders* v. *Montague,* 180 Ill. 300; *Harp* v.
*Parr,* 168 id. 459; *Wombacher* v. *Barthelme, supra.*) Some
of the questions, which counsel for plaintiff in error asked
the witnesses, and to which objections by counsel for defend-
ants in error were sustained, sought to prove declarations of
the testatrix, which were opposed to the provisions of her
will, and not in harmony with it; and, therefore, the action
of the court in sustaining such objections was not erroneous.
It appears that Mr. Sheean, a lawyer in whom the testatrix
had great confidence, had advised her to make a will, and
told her that she could waive therein the giving of a bond,
and suggested to her that, if she wanted him to make the
will, he could take memoranda of what she desired home
with him to Galena, and there write the will, and send it to
her. She, however, subsequently concluded to employ a
lawyer living in Savanna, named Wingert, to draw her will
for her. We see nothing in the evidence to indicate that the

will thus drawn was not in accordance with her intentions in regard to the disposition of her property.

It is said, however, that there is no evidence in the record showing that she ever read the will, or that the will was read to her. The evidence is clear and conclusive that, when the subscribing witnesses came to her house and witnessed the will, they not only saw her sign it, but she stated to them, in answer to questions, that the document which they were asked to witness was her will. A. G. Jackson, one of the witnesses to the will, and whose testimony is in the record, says: "She spoke and shook hands with me, and said she had requested Mr. McKenney to ask Mr. Rinewalt and myself to come for the purpose of witnessing her signature to her will; saw paper or writing on the table; Mrs. Mark, Mr. Rinewalt, Mr. McKenney and myself were there; Mrs. Mark was sitting in a chair; the paper upon the table I afterwards signed, she said it was her will; I saw her sign it." The other witness, John M. Rinewalt, says: "Mrs. Mark said she asked us to come up for the purpose of witnessing her will; Miss Annie Mark, now Mrs. Tipton, went in and out once or twice; Mrs. Mark took the instrument and wrote her name to the bottom of it; 'Exhibit A' in this case, I believe, is the will that she signed; I saw her sign her name on that date; after she had signed it, I took it, and asked Mrs. Mark, 'Do you declare this to be your last will and testament, and desire us to witness it?' and she said she did; when she signed her name, Mr. Jackson and Mr. McKenney and myself were present; I attached my name as a witness."

In *Sheer* v. *Sheer*, 159 Ill. 591, we said (p. 594): "The rule of law is, 'where the testator is shown to have executed an instrument as his will, being in his right mind, and there is nothing of fraud or imposition, it will be presumed that he was aware of its contents. The general rule is, that proof of the testator's signature to the will is *prima facie* evidence of his having understandingly executed the same." As was said in *Sheer* v. *Sheer, supra,* "without attempting to review

the evidence at length, we are satisfied that it cannot be said that it establishes the fact that the testator was, at the time he executed the instrument and requested its attestation by the witnesses, ignorant of its contents and provisions. Where a will is shown to have been prepared at the request of a testator, even under general directions, and is afterwards executed in the manner provided by law, it should not be set aside on the ground that he did not understand what it contained, except upon clear and satisfactory proof of that fact." Here, there is no such clear and satisfactory proof upon this subject.

. In the case at bar, there is evidence showing that the testatrix was not unduly influenced by Oscar F. McKenney in the matter of executing her will; and, this being so, the verdict of the jury, who are properly judges of the fact whether there was undue influence or not, will not be disturbed. The proponents of the will upon the trial below furnished *prima facie* proof of the validity of the will, and therefore the burden of proof was upon the contestants to substantiate the charge that the testatrix, when she executed the will, was under the undue influence of Oscar F. McKenney, as charged in the bill. It was incumbent upon the contestants to overcome the *prima facie* case, made by the proponents, by a preponderance of the evidence. This they failed to do. (*Swearingen* v. *Inman,* 198 Ill. 255; *Webster* v. *Yorty,* 194 id. 408; *Michael* v. *Marshall,* 201 id. 70.)

*Second*—It is claimed by plaintiffs in error that the court below committed error in the admission and exclusion of evidence. It is said that the court erred in sustaining an objection, made by defendants in error to certain questions asked by the plaintiffs in error upon the cross-examination of a certain witness produced by the proponents, named Moffett. No error was committed in this regard, because the questions, to which objections were thus sustained, were not proper cross-examination. Moffett was asked, upon his direct examination, what the testatrix said to him in regard to

the trial of the suit with Ashway. The questions, asked upon cross-examination, were in reference to what she said about her heirs and about making a will. It is clear that the conversations, about which the witness was asked on cross-examination, were not the same as those, about which she was asked upon direct examination. Some of the proponents' witnesses testified as to statements of the testatrix about founding an old ladies' home. The contestants introduced a witness, named Craig, who was asked if, in any of the conversations he had with the testatrix, he heard her say anything about founding an old women's home. This answer was properly stricken out on motion of the proponents, because it was not claimed by anybody, nor shown, that Craig was present at any of the conversations, which the witnesses had with the testatrix about an old women's home, and, therefore, the fact that she never said anything upon that subject to him, could not contradict the proponents' witnesses who said that she had talked about it. Again, it is said that the court improperly struck out the testimony of one Libberton as to statements made to him by the testatrix. Counsel stated that the object of these questions was to show the mental condition of the testatrix, but, as her mental condition was admitted to be that of a person of sound mind and memory, the court properly ruled that no more testimony upon that subject would be heard. Counsel for contestants had repeatedly declared in open court that they admitted that she was of sound mind and memory. Certain questions were asked of a witness named Bucher, the object of which was to show that the testatrix had declared that she intended to leave her property to her heirs. These questions were improper upon the ground that declarations of the testatrix, made previously or subsequently to the execution of a will, cannot be proven in order to invalidate the will. (*Dickie* v. *Carter,* 42 Ill. 376; *Massey* v. *Huntington,* 118 id. 80; *Reynolds* v. *Adams,* 90 id. 134.) "The declarations of a testator or grantor, made before or after the execution of a will or

deed, might be competent evidence to prove mental condi-
tion, but such declarations are not competent to show undue
influence or fraud." (*Massey* v. *Huntington, supra*).   In
*Bevelot* v. *Lestrade,* 153 Ill. 625, we said (p. 631) : "It was
not error to exclude her [testatrix's] declarations made be-
fore the execution of the will, and which were in conflict
with its provisions.  Such parol declarations cannot be shown
to invalidate a will.  (*Dickie* v. *Carter,* 42 Ill. 376).   They
are sometimes admitted to prove mental condition.  (*Massey*
v. *Huntington,* 118 Ill. 80).   But they were unnecessary for
that purpose here, because it was virtually conceded on both
sides that the testatrix was of sound mind when she made
her will."   So, in the case at bar, as it was conceded that
the testatrix was of sound mind when she made her will, it
was unnecessary to introduce declarations for the purpose of
showing her mental condition.   It is furthermore claimed
that the court erred in allowing Lewis Browning, husband
of one of the devisees, to testify as a witness for proponents.
It appears from the record that, after certain questions were
asked of this witness, the counsel for the contestants an-
nounced to the court that they withdrew their objection to
the testimony of Lewis Browning.   After the withdrawal of
the objections, he was permitted to testify; and, therefore,
no error was committed.   It is furthermore said that the
court refused to allow Libberton, a witness of plaintiffs in
error, to testify that the testatrix was a woman easily influ-
enced or susceptible to flattery.   No error was committed in
this regard, because in *Michael* v. *Marshall,* 201 Ill. 70, it
was said (p. 74) : "The first thing in the order of events at
the trial, which is made the ground for seeking a reversal of
the decree, is, that the court erred in sustaining objections
to questions calling for the opinions of witnesses.  The ques-
tions were as to whether the testatrix was a person easily
influenced;  as to what influence her uncle and aunt exer-
cised over her;  to what extent she had been influenced by
her uncle, and to what extent she had been influenced by her

aunt; whether she was afraid of her uncle and other like questions. It is manifest that the court was right in its ruling, since the questions did not call for facts, but for mere opinions and conclusions from facts." So, in the case at bar, the question as to whether the testatrix was easily influenced or was susceptible to flattery called for mere opinions, and conclusions from facts.

*Third*—It is claimed that the court below erred in reference to the giving and refusal of instructions. The first error assigned is, that the court erred in giving for the defendants in error the fourth instruction. That instruction told the jury that the question of the soundness or unsoundness of the mind and memory of the testatrix was not in the case, it being admitted by the contestants that she was of sound mind and memory at the time of executing the instrument introduced in evidence, and purporting to be her last will and testament; and that, unless the jury believed from the evidence that said instrument was the result of undue influence exercised over the mind of the testatrix by Oscar F. McKenney, then they must find by their verdict that it was the will of Caroline Mark. This instruction was not erroneous under the circumstances of this case. It is clearly shown that counsel for the contestants announced to the court that they did not claim, and would not undertake to prove, that the testatrix was insane or of unsound mind. When one of the witnesses was asked whether in his opinion the testatrix was of sound mind and memory at the time of making the will, one of the counsel for plaintiffs in error arose in court and said: "We make no claim as to her unsoundness of mind, only her testamentary capacity. This is simply a waste of time on the question of sanity. There is no question about that. It is this question of undue influence, to show the party is illiterate, the fiduciary relation, and the fact that she didn't know the contents of this will." It further appears that no witnesses testified that the testatrix was not of sound mind and memory at the time of exe-

cuting the will, and the contestants offered no proof upon that subject. This being so, the instruction was not erroneous. In *Illinois Central Railroad Co.* v. *King,* 179 Ill. 91, we said: "It is not ground for reversal that an instruction assumes as proven a fact conclusively established by the evidence without contradiction." (*Gerke* v. *Fancher,* 158 Ill. 375; 11 Ency. of Pl. & Pr. p. 132.) It is said by counsel for plaintiffs in error that some of the defendants below were minors, and, therefore, could not be bound by the admissions of counsel. This is so, but as the testimony showed conclusively that the testatrix was of sound mind, and there was no evidence whatever to contradict it, there was nothing to be submitted to the jury upon this issue, and the court committed no error in so directing them.

It is also claimed that the court erred in giving the thirteenth instruction, which was given for the proponents. That instruction was as follows:

"The jury are instructed as a matter of law that it is not sufficient that the circumstances appearing in evidence attending the execution of the instrument in evidence in this case, purporting to be the last will and testament of the said Caroline Mark, are consistent with the hypothesis of its having been obtained by undue influence; it must be shown that they are inconsistent with a contrary hypothesis. Circumstances which should avail for the proof of fraud are only such as are inconsistent with a contrary view of the transaction."

The language of this instruction is the same as that which appears in section 239 of Schouler on Wills, (2d ed.) and in the case of *Boyse* v. *Rossborough,* 6 H. L. Cas. 6. In Schouler on Wills, sec. 239, *supra,* it is said: " 'In order to set aside the will of a person of sound mind,' observes Lord Cranworth, 'it is not sufficient to show that the circumstances attending its execution are consistent with the hypothesis of its having been obtained by undue influence; it must be shown that they are inconsistent with a contrary hypothe-

sis.' And the same holds true where positive fraud or force is the ground of objection. Hence is it that isolated and disconnected circumstances are not permitted to outweigh the usual presumption of the law, that a person of intelligence and capacity, who executes a will, does so without imposition or undue influence."

In connection with the thirteenth instruction it is claimed, on the part of the plaintiffs in error, that the court below erred in refusing to give instructions 19, 20, 21 and 22 asked by plaintiffs in error, the contestants. The instructions thus refused announced the doctrine, in substance, that, if the jury found that confidential relations existed between the testatrix and Oscar F. McKenney, the burden of proof shifted to the proponents to show that the alleged will was the free and voluntary act of the testatrix. It cannot be said that, after proof was introduced showing the relations, which existed between McKenney and the testatrix, the presumption of undue influence was so raised as to shift the burden of proof to the proponents of the will. In *Michael* v. *Marshall,* 201 Ill. 70, it was said (p. 76) : "As a matter of law, the burden of proof in any case is determined by the issues, and it does not shift, but at the end the party, upon whom the burden rests by the pleadings, must have sustained his position by a preponderance of evidence." In the case at bar, under the issue made by the pleadings, the burden of proving undue influence was upon the complainants, who filed the bill below. (*Roe* v. *Taylor,* 45 Ill. 485; *Webster* v. *Yorty,* 194 id. 408; *Michael* v. *Marshall,* 201 id. 70). This burden of proof remained upon the contestants to the end of the trial. In *Weston* v. *Teufel,* 213 Ill. 291, where it was said that, when proof of a fiduciary relation between the testator and the beneficiary in a will was made, the presumption arose that undue influence induced the execution of the document, and that there was, therefore, imposed upon the proponent the necessity of showing that the execution of the will was the result of free deliberation on the part of the

testator, and of the deliberate exercise of his judgment, and not of imposition or wrong practiced by the trusted beneficiary, it was nevertheless at the same time said: "This, however, does not change the general rule which is, that, upon the whole case, the burden of proof is upon the contestants to establish the undue influence." Where it is said that, when such proof of a fiduciary relation is introduced, the burden of proof is shifted, "all that is meant by this is that there is a necessity of evidence to answer the *prima facie* case or it will prevail, but the burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact, which constitutes the issue; and this burden remains throughout the trial." (*Chicago Union Traction Co.* v. *Mee*, 218 Ill. 9). To have given the instructions asked by the contestants, and which were refused, would have been to tell the jury, that the burden of proof was upon the proponents to show that there was no undue influence. It would have been erroneous to give the jury such instructions, and their refusal was not error.

Complaint is also made that the court erred in giving several other instructions for the proponents, upon the alleged grounds that each of such instructions isolated a certain fact, and told the jury that such fact was not sufficient to overthrow the will. It is said that instructions of this character were condemned in *Weston* v. *Teufel, supra*. We do not think that the instructions complained of are justly subject to the criticism made upon them. For instance, one of these instructions sought to define the degree of influence, which would vitiate the will upon the ground of undue influence, by stating that it must amount to such a degree of restraint and coercion as to destroy the free agency of the testatrix. This was a correct definition of undue influence under the decisions of this court. (*Woodman* v. *Illinois Trust and Savings Bank*, 211 Ill. 578; *Johnson* v. *Farrell*, 215 id. 542). In thus defining the general character of undue influence, there was no statement of an isolated fact, which did or did

not constitute undue influence. Two of the instructions complained of called the attention of the jury to the question, whether or not the testatrix, when she signed and executed the will, knew what it contained, and whether or not the testatrix fully understood its provisions. These instructions were not erroneous as calling attention to the ignorance or understanding of the testatrix as an isolated fact, because one of the allegations in the bill was that the testatrix was illiterate, and had no knowledge of the value of her estate, and no understanding of the contents of the will. This allegation as to her ignorance of the contents of the will was additional to the allegations, that she was of unsound mind and memory and the victim of undue influence. In *Swearingen* v. *Inman,* 198 Ill. 255, we said: "It is insisted that there was ground for invalidating the will in the fact that the testatrix did not know its contents when she signed it. * * * The claim that the testatrix did not know how she disposed of her property is neither the same as, nor consistent with the averment, that she was induced to make a particular disposition of her estate by the undue influence of her husband." (See also *Sheer* v. *Sheer,* 159 Ill. 591; *Wombacher* v. *Barthelme,* 194 id. 425). The instruction, therefore, was directed to an independent allegation of the bill, set up as an independent reason for setting aside the probate of the will. Two of the instructions objected to related to facts bearing upon the question, whether or not the testatrix was of sound mind and memory, but as the soundness of her mind and memory was not in dispute or controversy, the instructions upon this subject could have done the contestants no harm. On the contrary, the court at the request of contestants gave to the jury, the following instruction, to-wit:

"The court instructs the jury that, if you believe from the evidence in this case that Caroline Mark was a person so illiterate that she could not read and understand the instrument offered in evidence, and that at the time she signed the same Oscar F. McKenney was her agent, and that she re-

posed special trust and confidence in him, and that said Mc-Kenney caused said instrument to be written by an attorney, who was a stranger to Mrs. Mark, and out of her presence, and that said McKenney dictated to said attorney each and every provision of said will, and that said Oscar F. McKenney solicited and procured the attesting witnesses to the said instrument, and that one of said attesting witnesses was his co-partner in the banking business, and that the other of said witnesses was very little acquainted with Mrs. Mark, and that Oscar F. McKenney received a beneficial interest in the alleged will, then, in making up your verdict in this case, you have a right to take into consideration all these facts, if proven, together with the testimony of witnesses and all the other facts and circumstances in evidence in this case, in determining whether the instrument in question was procured by undue influence, as explained in these instructions."

This instruction submitted to the jury all the facts and circumstances, insisted upon by the contestants as showing undue influence over the testatrix by McKenney. The jury found against the contestants upon the question of undue influence, as thus submitted to them. We have held that, where the evidence is conflicting, as it is in the case at bar, upon the question whether the execution of a will was brought about by undue influence, a court of review will not disturb the verdict of a jury, which has been approved by a trial court, unless the verdict is clearly against the weight of the evidence. (*French* v. *French*, 215 Ill. 470; *Johnson* v. *Farrell*, 215 id. 542; *Piper* v. *Andricks*, 209 id. 564; *Spencer* v. *Spruell*, 196 id. 119; *Kinnah* v. *Kinnah*, 184 id. 284; *Bevelot* v. *Lestrade*, 153 id. 625). Here, the verdict of the jury is not, in our opinion, clearly against the weight of the evidence.

*Fourth*—The defendants in error have filed in this case the record in another proceeding, begun and consummated after the rendition of the final decree, which is here sought to be reviewed. They have also filed an abstract of this addi-

tional record. The final decree, here sought to be reviewed, was entered on March 25, 1902, and an appeal therefrom was prayed and allowed, but not perfected. Subsequently, in June, 1905, the present writ of error was sued out for the purpose of reviewing the decree, so entered on March 25, 1902. Twenty-one months after the final decree was entered on March 25, 1902, a petition was filed in the court below, to-wit, on December 17, 1903, in which a decree was entered on December 18, 1903, relating to a compromise, alleged to have been made of the proceeding for the setting aside of the will of Caroline Mark, deceased, here brought under review. The decree, rendered on December 18, 1903, recites that certain of the petitioners therein, who were parties to the suit to set aside the will, and legatees and devisees under the will, had accepted the bequests and devises made to them, and it also recites that a certain agreement had been entered into between the executors and trustees herein and some of the parties to the suit to contest the will, who are minors acting through a next friend, by the terms of which a certain amount of money was to be paid as a compromise or settlement of the litigation, seeking to set aside the will. It is evident that the record and decree in the compromise suit are separate and distinct from the record and decree in the suit to set aside the will. In the suit to set aside the will, begun on July 13, 1901, and in which the final decree was entered on March 25, 1902, there is nothing in relation to this compromise suit, begun on December 17, 1903, and ended by a decree on December 18, 1903. In the certificate of evidence in the suit to set aside the will nothing is said about the compromise suit thus referred to. It is clear that this additional record cannot be considered by us in this case.

If it was the desire of the defendants in error to bring the subject matter of this additional proceeding to the attention of this court, a plea of release of errors should have been filed, but no such plea has been filed in this case.

In *Kern* v. *Zink*, 55 Ill. 449, it was held that a release of errors, although presented in writing, signed by the parties in whose name a writ of error was sued out, cannot properly be brought to the notice of the court, except by being pleaded. And we there said: "A paper purporting to be a release of errors, and to be executed by said Peter and Emma, has been filed with the papers in the case, but as the release has not been pleaded, we cannot notice it." In *Trustees of Schools* v. *Hihler*, 85 Ill. 409, it was held that, if matters are relied on in this court as a release of errors, they must be pleaded, or they will not be regarded; and we there said: "If relied on as operating as a release of errors, counsel should know that, under the well established practice, it should have been pleaded. Releases, and papers operating as such, to be regarded by the court, must be brought to its attention by a regular plea. This is a court of record, and as such, matters of this character must be relied on according to the practice in such tribunals." In *Moore* v. *Williams*, 132 Ill. 591, we again said (p. 594): "If the reasons of the Appellate Court for dismissing the appeal were based upon facts outside of the record, and occurring after the decree of the circuit court, from which the appeal was taken, had been rendered, it was improper to consider such facts as operating as a release of errors, unless they had been pleaded as such release. * * * Where a party accepts the benefit of a decree, he cannot afterwards prosecute error to reverse it; such acceptance operates as an estoppel and may be treated as a release of errors, but, in an appellate court, matter operating as a release of errors must be set up in a plea to the assignment of errors."

In the case at bar, it appears from the decree rendered on December 18, 1903, in the compromise suit, that certain of the parties to the original litigation had accepted the benefit of the decree below by taking the amounts bequeathed to them under the will. Such acceptance, or the decree finding it to exist, may be regarded as a release of errors, but as such

it should be pleaded. In the present case, this course has not been pursued, and, therefore, the additional record and the abstract of the same are not before us for consideration. (*Trapp* v. *Off,* 194 Ill. 287; *Thomas* v. *Negus,* 2 Gilm. 700; *Corwin* v. *Shoup,* 76 Ill. 246; *Holt* v. *Reid,* 46 id. 181; *Beardsley* v. *Smith,* 139 id. 290;) and the cost of the same will be taxed against the defendants in error.

For the reasons above stated, we are of the opinion that the decree of the circuit court was correct; and it is accordingly affirmed.                           *Decree affirmed.*