CARPENTER, J.
This action was brought in the common pleas court to contest the will of Dorothy Morris, executed June 17, 1909. It was drawn by her attorney, H. J. Caldwell, who for many years was one of the judges of the circuit court of this district. He is remembered by the judges of this court as. an unusually painstaking, careful and able jurist. He was named in the will as executor.
Shortly after his death the testatrix executed a codicil to her will in which she appointed the Guardian Savings & Trust Co. as executor. Subsequently she executed in succession three additional codicils dated respectively November 16,1910, February 28, 391.1, March 25, 1913.
The language of the will is remarkable for its simplicity and clearness of expression throughout. Indeed, one can scarcely perceive how it could be improved in any respect. As an example of this we quote this clause:, “What remains of my estate after taking therefrom my just debts, the foregoing legacies and said notes not to be accounted for, which I hereafter call the residue of my estate, I give and divide as follows-.”
The testimony is quite voluminous, but from it all we may extract:
1. That all the witnesses testify that the testatrix was of sound mind:
2. That she knew full well and appreciated the nature and extent of her property, and had in memory even the names and birthdays of her children as well as her grandchildren.
3. That she was an unusually methodical woman in all-her financial dealings. She kept - records of all her receipts and disbursements, and was insistent upon having an explanation of any financial matter or business transaction in which she was interested;
4. And that she had sufficient mental capacity to under *282 stand tbe nature and legal effect of the provisions of her will and codicils if they were explained to her.
In fact, .the foregoing appears to be admitted by counsel L’or plaintiff, but they claim that the will was neither read to her nor explained. And it will be noted that there is no positive evidence in the record that the will was read or not read and explained to her before its execution, except that the witnesses- to the will testified that they were called in by Judge Caldwell to witness the will, which had been prepared by him; and that during the time they were so occupied the will was neither read nor explained.
At the conclusion of the evidence, the court granted the motion ef the defendants to withdraw the case from the jury and direct the jury to return a verdict in their favor. This was done, and a verdict returned as directed.
The contention of the plaintiff is expressed in counsel’s brief as follows-.
“We have said probably Dorothy Morris possessed testamentary capacity, but granting that she did possess testamentary capacity, we contend, upon ample authority, that in addition to the possession of testamentary capacity it was necessary that Dorothy Morris should know what the will contained and knowing what the will contained, should understand it. Otherwise plainly it is not her will. Otherwise plainly her mind did not accompany the testamentary act.” But counsel, having admitted testamentary capacity of the testatrix, has fallen into a pit from which he can not extricate himself, by his own citation, of' authority, whieli he quotes from the following cases of Tomkins v. Tomkins, 1 Bailey’s Law 92 (S. C.) [19 Am. 656-659], and Den v. Johnson, 5 N. J. L. (2 South.) 455 [8 Am. Dec. 610-13 and 14], respectively:
“A will is defined to be the declaration of a mind, as to the manner in which he would have his estate disposed of after his death. The usual and almost the only mode in which assent to a writing is manifested, is by subscribing it; and, in the absence- of any other proof, that would be sufficient evidence of assent to a will, as well as to any written contract. This constitutes, indeed, the highest evidence; but it is not con- *283 elusive. According to the definition, a will. ought to express the mind of the testator; and. that can not be his mind, or will, of which he is ignorant. The case of Billinghurst v. Vickers, 1 Phillim, 187, furnishes some of the rules by which we are to be governed in the inquiry as to the assent of the testator. In that case Sir John Nicholl lays it down as a principle well established, that where capacity is in any degree doubtful at the time of the execution, there must be proof of instructions or reading over.” Tomkins v. Tomkins, supra.
“If, upon the whole, the jury should be of the opinion that the mental powers of the testatrix were so far enfeebled and broken as that she' could not make a discreet disposition of her affairs herself, and that the will in question urns devised by other persons, and only assented to by her on being asked, without the power of understanding it, then they ought to find for the plaintiff.
“Again it was stated (in the charge to the jury) that though they, should find that the testatrix did possess her mind, in such a degree that she might have made a rational disposition of her affairs, yet if they should' be of the opinion from the whole evidence, that the will was written without any consultation with, or direction from her, and that from her great weakness and debility she ivas unable to read the same .as the plaintiff had alleged, then it was incumbent upon the defendant to prove that it had been fully read' or fully explained to her, for without that, though it might be her will in form, it could not be so in truth and fact.’’ Dem v. Johnson, supra.
“Where a 'will is not read by or to the testator, and it has been prepared by another person from instructions given by the testator, and is then signed oh an assurance that it expresses what he desires, if the language inserted is not the language of the instructions, and if it does not make in legal effect the provisions which the testator apparently desired, it is not his will.” Waite v. Frisbie, 45 Minn. 361 [47 N. W. 1069].
■ It is manifest that the plaintiff has not brought herself within the law as announced in these excerpts. • There is not only no évidence that “the testatrix was so far enfeebled and *284 broken as that she could not make a discreet disposition of her. affairs, ’ ’ but the evidence is positive to the contrary. Neither is any evidence introduced that her capacity is somewhat doubtful. The presumption is that the will was prepared from instructions given by the testatrix and that it was drawn expressive of those instructions and was read to her and explained. Every lawyer knows from his own experience in drawing wills that the will is written from instructions given him by the testator, and invariably is read carefully to him before it is signed.
In the case of Sheer v. Sheer, 159 Ill. 591 [43 N. E. 334], the court in its opinion says:
“The rule of law is, ‘where the testator is shown to have executed an instrument, as his will, being in his right mind, and there is nothing of fraud or imposition, it will be presumed that he was aware of its contents. The general rule is, that proof of the testator’s signature to the will is prima, facie evidence of his having understanding^ executed the same. ’ ’
The third clause of the syllabus in that case is as follows:
“A will prepared at the request of a testator’, even under general directions and afterwards executed in the manner provided by law, should not be set aside on the ground that he did not understand what it contained, except upon clear and satisfactory proof of that fact.”
Section 12083 G-. C. provides that “on the trial of such issue the order of probate shall be prima fade evidence of the due attestation, execution and validity of the will or codicil.” The burden of proof is thereby east upon the contestant.
We are convinced that the plaintiff has utterly failed in producing even a scintilla of evidence tending to prove her case as the law requires. Such being the case, we are also clearly of the opinion that the court did not err in withdrawing the ease from the jury and instructing the jury to return a verdict for the defendants. It is so provided in Wagner v. Ziegler, 44 Ohio St. 59 [4 N. E. 705], the second clause of the syllabus of which is as follows:
“In the trial of the contest of a will, where the testimony introduced does not tend to prove the issue on the part of the plaintiffs showing incapacity of the decedent to make a will *285 at the time the will was made, it is not error for the court, at the conclusion of the plaintiff’s testimony, to direct the jury to find a verdict sustaining the will. ’ ’
Even though we are in error in so holding, yet we must remember there were four codicils to this will, and that Mrs, Osborne testified that a few months after her mother executed the will she read it to her mother, and they talked together about its provisions. When she came to the provision regarding Aunt Hannah Nicholas, her mother said: “Do!lie, I am very glad you think that I can give that to Aunt Hannah, because I always feel that she needed the money. She has worked hard.” And when she came to her nieces, Dollie and Mollie Price, her mother said: “I always tried to do all I could for my sister’s children.”
George F. Hart, who drew up the second codicil, testifies that he “read the will twice to the testatrix, item by item, and explained to her the items as I went through,” and that she seemed to comprehend the purport of the document.
John Fish, who was a witness to the last codicil, testified that he read the will and the codicil to the testatrix, and she asked him some questions on the will, and more particularly on the last codicil. She asked me the effect on the will and the previous codicil to which it referred.
It is the law of this state that a will and codicil are to bo taken and construed together as parts of one and the same instrument, and the intent of the testator gathered from the whole. Mack v. Bonner, 3 Ohio St. 366, 369; Black v. Webb, 20 Ohio St. 311.
It is also a general rule of the law that a properly executed codicil, which is attached to a will or which refers to it specifically acts as a republication of the will as of the date of the codicil, and the effect of republication is to make the will in legal effect a valid will as executed at the time of such republication and speaking as of such time. Page, Wills, Sees. 307 and 308.
“Also, when a codicil is written on the same piece of paper or a separate one, and clearly and unmistakably refers to the will so as to preclude all doubt as to its ideníéty, pttof of the *286 codicil will establish the will.” Frye v. Morrison, 159 Ill. 244 [42 N. E. 774].
Inasmuch, therefore, as the will and the codicils became in legal effect, by republication, one instrument and one will dating from the time of the execution of the last codicil, plaintiff would Scarcely be allowed to claim, in face of the admitted evidence, that the testatrix did not understand the provisions of the will because they were not explained to her.
The decision of the court of common pleas is therefore affirmed.