Argued February 15, affirmed March 15, 1921.

## IN RE LE GAULT'S ESTATE.
## LE GAULT v. NEWELL.

(196 Pac. 254.)

**Wills—That Attorney Named as Executor Drew Instrument Does not Create Presumption of Undue Influence.**

1. The mere fact that the attorney who drew the will is named as executor creates no presumption of undue influence, and does not shift the burden of proof on such issue to such executor on contest of the will.

**Wills—Strict Proof as to Influence on Testator by Beneficiary Required, Where Will Grossly Unjust.**

2. In cases where the will is grossly unjust or unnatural, courts will require strict proof on the issue of influence on testator, where the principal beneficiary sustains confidential relations to him.

**Wills—That Attorney Who Drew Will Did not Disclose Fact to Testator's Daughter is not Evidence of Undue Influence.**

3. The fact that the attorney who drew testator's will did not disclose to contestant thereof for undue influence, testator's daughter, that he had prepared a will for her father, is not evidence of any fraud or any undue influence on testator on the part of such attorney, named as executor and trustee, in view of his professional relations.

**Wills—Evidence Held to Show Instrument True Expression of Testator's Intent.**

4. On contest of a will by testator's daughter, alleging fraud and undue influence on the part of the attorney who drew the instru-

---

1. Undue influence affecting wills and presumption thereof, see notes in 21 Am. St. Rep. 94; 31 Am. St. Rep. 670.

ment, he being named as executor and trustee, evidence *held* to show that the will was the true expression of the intent of testator, and was the result of a conclusion formed by him long before it was executed.

From Multnomah: GEORGE TAZWELL, Judge.

Department 1.

Napoleon Le Gault died in Multnomah County on June 6, 1918, leaving an estate consisting of both real and personal property. His heirs at law were the contestant, a daughter, and Chester Oliver Le Gault, a grandson. About June 22d of the same year, P. E. Newell, one of the respondents herein, filed a petition for the probate of an instrument purporting to be the last will of deceased, and the same was admitted to probate and the petitioner appointed executor.

The will, after providing for (1) the payment of debts, bequeathed (2) to Mary Leger, of Montreal, Canada, $500 in case of her survival after the testator's death; (3) to Israel Le Gault, a brother, $1; (4) to Jesse Breard, a stepson, $1; and (5) to Leota Le Gault of Portland, $1, with statement that testator had not been unmindful of her otherwise during his lifetime. This will is dated June 1, 1918. The following provisions are the crux of this controversy:

"Sixth: All the rest, residue and remainder of my estate, real, personal and mixed, I give and bequeath to my grandson, Chester Oliver Le Gault, of Kalamazoo, Michigan, said bequest to my said grandson to be placed in trust with P. E. Newell, of Portland, Oregon, as trustee for him to be delivered to my said grandson when he shall become of age.

"Seventh: I authorize and empower and appoint said P. E. Newell as the executor of this my last will and testament to carry out the provisions of this my last will, and to act without bonds in connection therewith and him, my said appointed executor herein named, and his survivors I do authorize and em-

power to sell and dispose of the real estate of which I die seized, at public or private sale, in accordance with his judgment, at such times and on such terms and conditions as he shall deem meet and proper, and to execute, acknowledge and deliver all papers and writings, deeds of transfer and conveyance therefor.''

On June 4, 1918, the testator executed a codicil to said will, which is as follows:

''I, Napoleon Le Gault, being still of sound and disposing mind, do hereby publish and declare this as a codicil to my last will and testament made June 1st, 1918, and the same being witnessed for me by C. B. Dahl and W. Shafer of and on said date. It is my wish, and I do will that that portion of my said will pertaining to my bequest to Chester Oliver Legault, my grandson, be reformed in this particular only, to wit: That in the event of the death of my said grandson before his majority, then and in that event, said bequest shall fall to and be given to Leota Le Gault and be distributed to her at the time same would have matured for distribution had same been distributed to my said grandson at his majority.''

On September 18, 1918, the contestant filed in the County Court sitting in probate a petition contesting the validity of said will, asking that the order admitting the same to probate be set aside and that the document be deemed not to be the last will and testament of deceased. The grounds for such contest are stated as follows:

''That said alleged will and the codicil attached thereto is not now and never was the last will and testament of Napoleon Le Gault, deceased; that at the time of the alleged signing of said document, by the said Napoleon Le Gault, deceased, and for some time prior to the execution of said pretended will and codicil, the said Napoleon Le Gault was not mentally capable of disposing of his estate by last will and

testament; that he did not and could not, at the times of signing said pretended will and codicil, comprehend the nature and meaning of such a document written in the English language, and that at the time of the signing of said pretended will and codicil, said Napoleon Le Gault did not understand the contents of said alleged will and codicil, and the contents of said alleged documents were not well and truly made known to said Napoleon Le Gault; that it was not his intention, nor his will, that his estate should be disposed of in the manner set forth in said pretended will and codicil thereto attached.

"That the said pretended will, and the codicil thereto attached, was signed by the said Napoleon Le Gault, under false and fraudulent representations made by said P. E. Newell; that it was not the will nor intention of said Napoleon Le Gault, that his grandson, Chester Oliver Le Gault should be left without any funds to provide for his care, maintenance and education until he reached the age of majority, but that by the undue influence exercised by the said P. E. Newell upon the mind of said Napoleon Le Gault, now deceased, he was induced to and did, sign document, by the terms of which his grandson was deprived of receiving any benefit from said estate until he had reached the age of 21 years, either from the principal or the income from the assets of his estate."

The defendant Newell answered, denying the allegations above quoted, and asserting the capacity of the testator and the validity of the will and codicil. Thereupon a trial was had, resulting in a decree sustaining the validity of the will and codicil; from which decree the contestant appeals.        AFFIRMED.

For appellant there was a brief over the names of *Mr. H. B. Nicholas, Mr. Newton McCoy* and *Mr. Robert Shaw,* with oral arguments by *Mr. Nicholas* and *Mr. McCoy.*

For respondent there was a brief and an oral argument by *Mr. Paulus E. Newell.*

McBRIDE, J.—Beyond the fact that the will made the attorney who drafted it the executor, there is no circumstance suggesting undue influence by him upon the testator, and this fact and the possible small advantage that might flow from it are circumstances far too slight to justify us in setting the will aside.

The testimony indicates that deceased was an obstinate, stubborn, rather quarrelsome old man, who had been divorced from his wife in a suit by her, in which she had, by division of property on their separation and later by decree in the divorce proceedings, received considerably more than half of the joint property, and that in the divorce suit contestant had taken the part of her mother. That this action on her part, while possibly justified, had angered and estranged her father there can be no doubt. Mr. Lavantura, Mr. Hardman, Mr. Krause, Mr. Lewis, Mr. Bell, Miss McKatcher, Mrs. Stowe, and Mrs. Strickland, all disinterested witnesses, testify to conversations indicating that deceased entertained a bitter and resentful feeling against his daughter and his ex-wife. While father and daughter may have exchanged civilities once in a while, it is evident that there was no warmth of affection on either side, and perhaps none on his part. In discussing this matter with acquaintances, for several years prior to his death, he repeatedly expressed his intention to leave nothing to his daughter. That this state of mind continued almost up to the time the codicil was drawn is shown by contestant's own testimony. The evening before the codicil was drawn, while deceased was ill in the hospital, contestant, with her mother, Mr.

99 Or.—40

Lavantura, and an attorney called in by contestant being present, and the matter of changes in the will being under discussion, the contestant, relating what occurred at the time, among other things testified as follows:

"Papa says, 'I am going to make it just as soon as I can,' and he started in to tell what he wanted to leave to this one and that one, and then he hadn't left anything to me, and then mama, I believe, mama asked him what he was going to leave to his daughter and he says, 'She has plenty, you are going to leave her what you have,' and mama says, 'Yes, but I am not dead yet and that is not very much anyway and you know she is not as young as she used to be; she has been working hard all her life and she ought to have some help from you.' "

She also stated that the attorney declined to go further, saying that nothing could be done, that he did not want to "force him to do anything if he was not willing." So, even at this date a careful and conscientious attorney was of the opinion that it would be improper to attempt to persuade deceased to change his mind so as to include contestant among the objects of his bounty.

That he made no provision for the maintenance and education of his grandson seems rather peculiar, but it must be remembered that he himself was an uneducated Frenchman, and probably did not attach the importance that we Americans do to the necessity of an education. Besides, the child had a mother who seems to have been taking care of him, and deceased possibly thought it would be better to leave to her the burden of bringing him up so that he would have the whole bequest as a start in life on coming of age. The fact which appears probable from the record, that deceased had for three years

before his death left his daughter-in-law to take care of his grandson without assistance, indicates this point of view.

1. There is no evidence whatever of lack of testamentary capacity. The mind of deceased was sound and clear. That the contestant so considered it is shown by her efforts to induce him to change the disposition of his property either by making a new will or by means of a codicil; and there is much greater reason for believing that the codicil, giving the reversion to contestant, was the result of undue importunity by her, than that the original will was procured by undue influence. Neither is there any evidence of undue influence exerted by Newell. The evidence indicates that deceased was singularly obstinate and self-willed. One witness says, "the angels in Heaven could not change him"; another, "I would hate to undertake the job of influencing him"; and another, "he was a man who thought he knew it all, you couldn't tell him anything, no use to argue with him." The mere fact that the attorney who drew the will is named as executor does not create the presumption of undue influence or shift the burden of proof upon him. The principal beneficiary here is the grandson of deceased, and it would be gravely unjust to put upon him the burden of proving the absence of undue influence, simply because the testator appointed the attorney who drew the will, the executor; and yet that burden would practically fall upon him.

2. In cases where the will is grossly unjust or unnatural, courts will require strict proof where the principal beneficiary sustained confidential relations to the testator; but in the case at bar, when the circumstances and the relations of the deceased to his

daughter, and his general character are considered, the will does not seem unnatural or different from what might have been expected. The mere fact that the attorney who drew the will is named as executor does not create a presumption of undue influence: *St. Leger's Appeal,* 34 Conn. 434 (91 Am. Dec. 735); *Dale's Appeal,* 57 Conn. 127 (17 Atl. 757); *Livingston's Appeal,* 63 Conn. 68 (26 Atl. 470); *Compher v. Browning,* 219 Ill. 429, 439 (76 N. E. 678, 109 Am. St. Rep. 346).

3. The fact that Newell did not disclose to contestant that he had prepared a will for her father is not evidence of any fraud or undue influence on his part. His professional relations with the deceased precluded him from so doing in the absence of instructions from his client.

4. Upon careful consideration of the whole case we are of the opinion that the will was the true expression of the intent of the testator, and was the result of a conclusion formed by him long before it was executed, and that the decree of the court below was correct. The decree is affirmed.    Affirmed.

Burnett, C. J., and Benson and Harris, JJ., concur.