Argued October 14, 1930; affirmed February 24, 1931

## In re DeHaas' Will
## BRUMBAUGH v. BARBER
### (296 P. 42)

J. N. *Hart*, of Portland (Jos. O. Stearns, Sr., of Portland, on the brief), for appellants.

R. C. *Bradshaw*, of Portland (Joseph, Haney & Veatch, of Portland, on the brief), for respondent.

BEAN, C. J. This is a proceeding to contest the will of Clara C. DeHaas who died in Portland, Oregon, April 29, 1928, at the age of 68 years, leaving as her sole heirs at law W. H. DeHaas, widower of decedent, and Audrien Brumbaugh, daughter, aged about 40 years, both of whom resided in Portland, Oregon. The trial court made findings of fact and conclusions of law in favor of contestant and against the proponents, holding that said pretended will of said deceased theretofore admitted to probate was void and of no force or effect, and set the will aside. The will was dated January 17, 1928. Proponents appealed.

The decedent bequeathed her jewelry to the above named Alice Barber and devised and bequeathed all the remainder of her estate to J. S. Barber, husband of Alice Barber, bequeathing nothing to her daughter Audrien Brumbaugh or her widower W. H. DeHaas. In the will the testatrix stated that she purposely refrained from making any bequest for the benefit of her daughter Audrien for the reason that she was sufficiently provided for by the insurance upon her life, and she also stated that she made no provision for the benefit of her husband for the reason that he was possessed of ample means to provide for his remaining years. DeHaas had a very small income. The will was admitted to probate in common form by order of the circuit court for Multnomah county on May 8, 1928. This contest was instituted on July 14 of that year. The grounds upon which the contest is based are that at the time of the execution of said will and for a long time prior thereto the decedent was mentally incompetent to make said will; that she was not in her right mind; that she did not have mental competency to realize the true meaning of the same, and also that the beneficiaries, J. S. Barber and Alice

Barber, by showering their attentions on decedent for the purpose of getting her to execute a will in their favor and by false and fraudulent statements and representations to her concerning her daughter, had so prejudiced the testatrix against her daughter and poisoned the mind of decedent against her daughter that decedent was induced, persuaded and procured by proponents to execute the will and to devise and bequeath substantially all of her property to them.

In 1913 Mrs. DeHaas, who was then Mrs. Hoxie, purchased the real property mentioned in this proceeding from the proponent J. S. Barber. Mr. and Mrs. Hoxie made their home on this property for a few years and then went east. While in the east the daughter of Mrs. Hoxie, Audrien Brumbaugh, separated from her husband and met her mother in the east. Mrs. Hoxie and her daughter came to Portland, Oregon, in October, 1918, and took up their home together on the property mentioned, where they resided about a year, when Mrs. Hoxie, desiring to secure some rental from her property, went to Newport, Oregon, with Mrs. Barber and remained there for approximately a year and a half. From this time until in 1927 Audrien Brumbaugh and her mother made their home together at different places in Portland. In 1926 they both moved to the property in question where they resided until about February 14, 1927, at which time, due to the severe illness of Mrs. Hoxie, she was confined in the Alice Campbell Sanitarium for a week or two; afterwards she went to St. Vincent's Hospital for about ten days, and then went to the county hospital for a period of about two weeks. From there she went to the home of Mrs. Doshia C. Brownell in Portland on May 1, 1927, where she remained until July 25, 1927, when she was

married to W. H. DeHaas. Afterwards she and her husband resided at the property mentioned until the date of her death.

The acquaintance of Mr. and Mrs. Barber with Mrs. DeHaas began in 1913 when Mrs. DeHaas purchased the real property, and from that time until her death Mr. and Mrs. Barber continued to strengthen their friendship with Mrs. DeHaas to such an extent that at the date of Mrs. DeHaas' death all the real and personal property vested in the name of J. S. Barber individually and, by the pretended will, all of the personal effects belonging to Mrs. DeHaas were bequeathed to the proponent Alice Barber, wife of J. S. Barber.

It appears from the testimony that practically all the business of Mrs. DeHaas, both before and after her marriage, was transacted by J. S. Barber and that not only was their influence exerted on Mrs. DeHaas, but also on Mr. DeHaas, who at the time unknowingly carried out the will of the Barbers, particularly in assisting in keeping the daughter from visiting her mother during her illness. It was so arranged a short time before the death of Mrs. DeHaas that the daughter, who had been denied admission to the house, could obtain such admission by coming with Mr. Barber. The idea is carried out by the proponents of the will that there was a bad feeling between the mother and her daughter; that the daughter was not only unkind to her mother but had threatened to do her bodily harm. If Mrs. DeHaas ever indicated that such condition existed, we think it must have been on account of her disordered mind. In a letter from the mother to the daughter dated February 6, 1928, only a short time after the alleged execution of the will, it shows a motherly interest taken by Mrs. DeHaas in her daugh-

ter and also a great interest in the granddaughter Juanita Brumbaugh and refutes any idea that Mrs. DeHaas did not have the usual motherly feeling for her daughter or that she entertained any feeling unfavorable to her. There is much ado made in regard to a little family misunderstanding between the mother and daughter at one time in regard to an automobile, which was settled and, we believe, should have been practically forgotten. The amount of the property involved is not large. Neither Mrs. DeHaas nor her daughter were in affluent circumstances. Mrs. Brumbaugh was for some time at work in a shipyard and was taking lessons pertaining to her occupation at night, and together the mother and daughter were striving to make an honest living and save some of her property.

The testimony shows, beginning January, 1926, Mrs. DeHaas had six "bad spells." During part of such times she did not apparently know what she was doing. There were symptoms of a serious spell on January 16, 1928. From the time Mrs. DeHaas came to the home of Mrs. Brownell, May 1, 1927, until the date of her death, J. S. Barber was frequently in attendance upon Mrs. DeHaas and was a frequent visitor at her home after her marriage to Mr. DeHaas.

On July 25, 1927, Mrs. DeHaas was married at Vancouver, Washington, to W. H. DeHaas. Prior to her marriage her name was Mrs. Hoxie. On July 23, 1927, Mrs. Hoxie executed a deed to the real property mentioned to J. S. Barber, and there is testimony that he and his wife executed a deed to the same property to Mrs. Hoxie but the deed from the Barbers to Mrs. Hoxie was kept by Mr. Barber and was never at any time recorded. After the marriage of DeHaas to Mrs. Hoxie, Barber took both Mr. and Mrs. DeHaas to the

office of attorney J. O. Stearns, of Portland, on the 17th day of January, 1928, when another deed to the same property was executed from Mr. and Mrs. DeHaas to J. S. Barber. This is termed a confirmation deed. On the same day the pretended will was executed by Mrs. DeHaas. On January 23, 1928, J. S. Barber, at the suggestion of Mr. J. O. Stearns, the attorney, executed a trust agreement in which he declared that he was holding the real property in trust for Mrs. DeHaas. This instrument was never recorded and Barber kept Mrs. DeHaas' deeds, etc. in his care. On November 26, 1927, Barber executed a note to the Portland Trust & Savings Bank of Portland for the sum of $2,500 and executed a mortgage on the property to secure the same. On February 12, 1928, Mrs. DeHaas suffered a stroke of paralysis which rendered her unable to move or speak and she would answer questions by nodding or shaking her head. While she was in such condition, Barber, with the assistance of Mr. DeHaas, caused her to authorize transferring to Barber all the money Mrs. DeHaas had in the bank, so just prior to her death the title to the real property and all of the money belonging to Mrs. DeHaas was in the name and hands of J. S. Barber. In the instrument or certificate authorizing the transfer of the funds in the bank, written by J. S. Barber, we find the statement "that no undue or unfair persuasion was used by anyone at any time to obtain said signature." We are reminded that it is possible for one to protest "too much."

While Mrs. Brumbaugh and her mother were living together the mother obtained some funds from an insurance policy on the life of her son, who died, and from the money so obtained the mother purchased a Willys-Knight automobile for some $1,800 or $2,000.

Mrs. Brumbaugh understood that this automobile was a gift from her mother, but later on, under the influence of the Barbers, possession of this automobile was turned over to Mrs. DeHaas and on December 29, 1927, she sold it to Mr. Barber for the sum of $400. It had been appraised at a value of over $800 at that time.

After Mrs. DeHaas had the stroke of paralysis on February 12, 1928, it was impossible for her daughter to see her and the testimony indicates that this was through the influence of Mr. Barber. Mrs. Brumbaugh never did see her mother after her last sickness up to the time of her death.

The probate court found, among other things, as follows:

"For some time prior to her death, Mrs. DeHaas was subject to what has been termed 'spells.' I am satisfied, from all the evidence in the case, that these 'spells' affected the physical and mental condition of Mrs. DeHaas to such an extent that, while she might not have been incapacitated mentally at the time of the execution of the will, she was an easy subject of undue influence on the part of any designing persons; especially would she yield to the persuasions of persons with whom she had been closely associated and who had ingratiated themselves into her confidence."

■ We concur in this finding and believe that Mrs. DeHaas in her enfeebled physical and mental condition was subject to the will of J. S. Barber and that it was at his instigation and through his influence that the will in question was executed; that it was not the will of Mrs. DeHaas and that the same is void.

The testimony of Mr. J. O. Stearns, who endeavored to straighten out the matter so that Mrs. DeHaas would be in a safe condition in regard to her property, states that at the time the confirmation deed was executed on January 17, 1928, and at the date of the

execution of the will which he had prepared before that time: "She had been in to see me, I think, about three or four days prior to that, and at that time she said to me she didn't see the use of all of this,—that she had deeded that property to Mr. Barber and it was his." While the testimony does not indicate that Mr. Stearns was aware of this, together with the other testimony it indicates that Mrs. DeHaas was not making the arrangements, but that they were initiated and carried forward in the interest of Barber.

█ J. S. Barber, during all the transactions referred to, sustained fiduciary relations with Mrs. DeHaas. Confidential relations existed between the testatrix and J. S. Barber, the beneficiary, and the will is inconsistent with the claims of duty and affection. In such case slight evidence that the beneficiary has abused the confidence will suffice to invalidate the will: *In Re Diggins' Estate,* 76 Or. 341 (149 P. 73). See also *In Re Dale's Estate,* 92 Or. 57 (179 P. 274); *In Re Le Gault's Estate,* 99 Or. 621 (196 P. 254).

█ The burden of proving the testamentary capacity of Clara C. DeHaas, deceased, at the time of the execution of the will, January 17, 1928, by a preponderance of the testimony, devolved on the proponents: *In Re Faling's Will,* 105 Or. 365, 441 (208 P. 715); *In Re Sturtevant's Estate,* 92 Or. 269 (178 P. 192, 180 P. 595); *In Re Will of Sue Parrot King,* 87 Or. 236 (170 P. 319). The proponents undoubtedly have not sustained such burden.

From a careful reading of the testimony we are thoroughly convinced that the decree of the trial court was right.

The decree is affirmed.

BROWN and BELT, JJ., concur.